FORT SMITH BUILDING ASSOCIATION *v.* COHN.

Opinion delivered May 27, 1905.

BUILDING AND LOAN ASSOCIATION—INSOLVENCY—DISTRIBUTION OF ASSETS.—
Where a building association has become insolvent, after expenses incident to the distribution of its assets are deducted, the general creditors, if any, should be first paid in full, and the residue of the fund should be distributed *pro rata* among those whose claims are

based upon the stock of the association, whether they have withdrawn their shares and hold orders for the withdrawal value thereof or not.

Appeal from Sebastian Circuit Court, Fort Smith District.

STYLES T. ROWE, Judge.

Reversed.

### STATEMENT BY THE COURT.

In the 5th day of March, 1900, the Fort Smith Building Association No 2, Permanent, was declared insolvent by the Sebastian Chancery Court, and receivers were appointed to administer its assets under the orders of the court.

On April 24, 1902, Mrs. E. Hunt filed an application in the cause, alleging that the said Association was indebted to her in the sum of $1,066.40, with interest thereon at eight per cent. per annum from December 1, 1897, until paid; that said indebtedness was evidenced by a promissory note of said Association, as follows:

"Fort Smith, Ark., Feby. 25, 1899.

"February 25, 1900, after date, without grace, the Fort Smith Building Association No. 2, Permanent, promise to pay to the order of Mrs. F. Hunt, Fort Smith, Ark., ten hundred and sixty-six and 40-100 dollars, for value received, negotiable and payable without defalcation or discount at the First National Bank of Fort Smith, Arkansas, with interest from December 1, 1897, at the rate of 8 per cent. per annum until paid. And, in the event payment is not made at maturity, further agree to pay the additional sum of ten per cent. of this note as attorney's fees, and all other expenses incurred in enforcing collection of this note, and its interest, or any part that may remain due and unpaid.

[Signed]    "S. A. WILLIAMS, President,
    "J. E. WEAVER, Secretary."

That the receivers of the Association had money enough in hand to pay all the general creditors of said Association; that she had made demand for the payment of said note with interest,

and that said receivers had refused to pay same. She prayed that the receivers be ordered to pay her said note and interest.

The receivers filed a response, setting up in substance: That prior to December, 1897, the applicant was a stockholder of the defendant Association; that, under some by-law or other rule of said Association, a member had the right to withdraw the value of his stock from said Association upon certain conditions; that the applicant undertook to withdraw the value of the stock owned by her, and that the note held by her was given by the president and secretary of said Association for the supposed value of her stock. Further answering, they say that neither upon the 1st day of December, 1897, nor upon the 25th day of February, 1899, the date of the note aforesaid, was the stock owned by the applicant worth the amount of the note, nor was it worth more than half the face of the note. That the president and secretary of defendant Association had no authority, directly or indirectly, to execute the note, and that the same had no binding effect upon said Association, and can have none upon these receivers. They allege that they find, from the books and records of said Association, that profits had for some years prior to their appointment been credited upon the stock of the members of the Association which had never been earned, and which had no existence; that these supposed profits had been credited upon the stock of the applicant, so that the apparent value of the stock was not its real value; that there are members who still hold their stock, and have filed the same as claims against the Association, and occupy same relation to said Association as the applicant, except that they had not asked to withdraw the value of their stock, who will receive upon the winding up of the affairs of the Association under the orders of the court much less than the face value of their stock, though they have been members as long as the applicant. They deny that applicant is a creditor of said Association otherwise than as a stockholder; deny that she is entitled to receive the face of the note set out with interest according to its tenor and effect; deny that the Association was indebted to her at the time of the execution of said note in the sum named in said note; deny the authority of the persons who signed said note as president and secretary to enter into any such obligation for said Association; and deny

the right of applicant to maintain a claim against said Association, save as a stockholder; and pray that, to the end that the assets of said Association may be ratably distributed to the members of said Association according to the real value of their stock, applicant be ordered to file her claim for the real value of her stock, and that her claim upon said note be disallowed.

After the application of Mrs. Hunt was filed, and before the hearing, Mrs. Dora Carnahan was permitted to adopt the application of Mrs. E. Hunt, and ask for an order directing the receivers to pay her a note executed just as Mrs. Hunt's for stock she held in said Association, her notice of withdrawal having been given at the same time as Mrs. Hunt's, and note bearing same date, and identical in terms, except that it called for $1,226.40. The court granted the prayer of both applicants, declaring that they were creditors of said Association, and directing the receivers to pay them the amounts claimed by them respectively, except that he allowed them 6 per cent. from December 1, 1897, instead of 8 per cent., as named in said notes.

The cases were submitted upon oral testimony,. which has been preserved by bill of exceptions.

On behalf of the appellees the testimony tended to show that prior to September, 1897, they became stockholders in appellant Association. They were investors, not borrowers. They gave notice through their agent, one Ed Hunt, of their desire to withdraw from the Association. This notice was served on the secretary of the Association. The notice of withdrawal expired December 1, 1897. The notes in suit were executed February 25, 1899. There was evidence tending to prove that at the time the notices of withdrawal were served on the secretary the liabilities of the Association exceeded the assets in the sum of $2,969, and also February 1, 1900, the liabilities exceeded the assets $2,328.96. In other words, the evidence tended to show that the Association was insolvent when the notices of withdrawal were served, and also insolvent when the notes were executed. The Association, however, ran on for two and a half years after the notice of withdrawal before it was declared insolvent by the court, and a little over a year elapsed from the time of signing the notes till insolvency was declared and the receiver appointed.

There was testimony tending to prove that Mrs. E. Hunt and Mrs. Carnahan withdrew from the Association "partially" because they believed the Association was in a "critical condition financially." Neither Mrs. Hunt nor Mrs. Carnahan paid any dues after notice of withdrawal.

The by-law under which the notice of withdrawal was given is as follows:

"Sec. 4. Any shareholder may withdraw from this Association any or all the shares held by him, upon giving one month's written notice of such intention to the board of directors, who shall repay to such shareholder, guardian or trustee the amount of dues actually paid by him, less 10 per cent. and his portion of all losses, liabilities and expenses, together with all fines that may be found due from him."

*Winchester & Martin,* for appellants.

The applicants for withdrawal failed to serve such notice as the by-laws required. Thornton & B., B. & L. Assn. 327. The Association was insolvent when notice was delivered to the secretary. 65 Ill. App. 131. A stockholder of an insolvent building association can gain no advantage by giving notice of withdrawal. 102 Pa. St. 189; 54 Ga. 98; 73 S. W. 374; 35 So. 466.

*T. W. M. Boone* and *F. A. Youmans,* for appellees.

If notice of withdrawal be given before it is known that the association is insolvent, the withdrawing stockholders become creditors. 47 Oh. St. 250; 100 Ia. 35; 53 Oh. St. 174. The president and secretary had no authority to execute the notes, 25 Oh. St. 208.

WOOD, J., (after stating the facts.) The court erred in rendering judgment for appellees as if they were creditors of the Association. The proof shows that the Association was insolvent at the time the notice of withdrawal was given, and continued so down to the time of the execution of the notes, which are the basis of appellees' claims.

The proof tends to show that appellees suspected that the Association was in a critical financial situation. But, even if it

be conceded that they did not know that the Association was insolvent, still, that would not affect the result here. For the indebtedness of the Association to them, evidenced by the notes, grows out of their relation to the Association as members. Conceding, without deciding, that the president and secretary had authority to issue such evidences of indebtedness under the by-laws, still these rules were prescribed for the conduct of the business of the Association in the regular course of a solvent institution. When insolvency takes place, whether the members are aware of it or not, no rule or by-law that was made for the internal regulation of the affairs of the organization can be used to enable one member to reap an advantage over another. All by-laws are suspended *ipso facto* by reason of insolvency, and the distribution of assets among members by the courts must be governed by the supreme rule of equality and mutuality.

While appellees made an honest effort to withdraw, and thought they had withdrawn, and were treated, after expiration of their notice, as if they had withdrawn, so far as the payment of dues, etc., was concerned, yet, as a matter of fact, actual withdrawal had not been consummated. For that could only take place by the payment for their stock. Such payment could only be made out of the funds of the Association set apart for such purpose, and, before such payment was made in fact, all the assets of the institution are brought into court for distribution. After they reach the court the claims of appellees are presented, evidenced by notes, but really bottomed on claims for the value of stock which they had in the insolvent concern. The fact that the claims were reduced to notes does not change their real character, and appellees in the distribution of the assets must be treated as other members who hold stock in the Association.

We are aware that there is conflict in the authorities upon this subject, but "the true rule," says Mr. Endlich, in his excellent work on Building Associations, "is undoubtedly that laid down by the Supreme Court of Pennsylvania, as follows: "When a building association has failed to fulfill the object of its creation, and has become hopelessly insolvent, after expenses incident to the administration of its assets are deducted, the general creditors, if any, should be first paid in full, and the residue of the fund should be distributed *pro rata* among those whose

claims are based upon stock of the association, whether they have withdrawn and hold orders for the withdrawal value thereof or not. Both classes are equally meritorious, and in marshaling the assets neither is entitled to priority over the other. The claims of each are like based upon their relation to the Association as members thereof." Endlich, Building Associations, §§ 514, 515; *Appeal of Christian,* 102 Penn St. 184; *Chapman* v. *Young,* 65 Ill. App. 131; *Walker* v. *Terry,* 35 So. Rep. 466; *Hohenshell* v. *Home Sav. & L. Assn.* 140 Mo. 566; *Rabbitt* v. *Wilcoxen,* 103 Ia. 35; *Heinbokel* v. *Nat. Sav & L. Assn.,* 25 L. R. A. 215. But see Thornton and Blacklege, Building and Loan Associations, § 329, where English cases are cited holding contrary doctrine.

The decree is reversed, with directions to proceed in accordance with this opinion.