### No. 31,926

W. S. McCaskill, *Appellant,* v. The Parsons Building & Loan Association and T. W. Atkins, *Appellees.*

(42 P. 2d 572)

Opinion filed April 6, 1935.

*Paul MacCaskill,* of Eureka, *Dwight A. Olds,* of Oswego, and *Carl V. Rice,* of Kansas City, Mo., for the appellant.

*Elmer W. Columbia,* of Parsons, for the appellees.

The opinion of the court was delivered by

THIELE, J.: The question in this appeal, whether the plaintiff was a shareholder in the defendant association, or by reason of a claimed deposit, a creditor of the association, was raised in the lower court by a demurrer to the petition, which, omitting formal parts, is summarized as follows:

Plaintiff had been a shareholder in the association, and about September, 1932, had been informed the association was not meeting its obligations; he visited the association and the secretary, the defendant Atkins, informed him that the association was not paying in full on withdrawals of unmatured stock, but was meeting its matured obligations at maturity, which statement was false, and that if plaintiff continued paying his monthly installments that he would be paid any time after maturity he desired, and that relying thereon he continued making his installment payments and matured $2,000 worth of shares about April 1, 1933. On April 2, 1933, he presented his matured certificate of shares for $2,000 to the defendant Atkins, secretary of the defendant association, for payment; that Atkins then stated that the association had the funds on hand with which to pay, but urgently insisted that plaintiff reinvest the money from the shares in the association, which plaintiff refused to do; that he needed his money and would not consent to awaiting a turn to receive it; that Atkins told him he could place the money on deposit with the association and could draw on the deposit the same as if it were in a bank, and further could add to or draw from the balance at any time, and at the end of any period of six months he would receive five per cent interest, compounded semiannually, on any balance; that Atkins at the time knew neither he nor the association had legal authority to accept said deposit, but, believing the statements of Atkins and relying thereon, he deposited the sum of $1,300 with the association, and Atkins, as evidence of the deposit, made an entry in a deposit book and handed the same to the plaintiff, face open, which deposit book he did not examine beyond reading the entry as made by Atkins. A copy of the deposit book was attached to the petition as an exhibit, and is hereafter referred to. It is further alleged that the association knew it had no right to accept deposits subject to check or withdrawable upon demand, and that the statements of Atkins were made for the purpose of ob-

taining and keeping the funds of plaintiff and by reason thereof the sum of $1,300 came unlawfully into the hands of the association and Atkins, and that neither Atkins nor the association acquired any right, title or interest in said sum, and it never entered into the capital or assets of the association, but was a trust fund, and not subject to any rules, regulations or by-laws of the association relative to shareholders and that Atkins and the association became unjustly enriched at the expense of plaintiff; that on July 3, 1933, and again on July 12, 1933, he demanded return of the sum of $1,300 and his demand was refused. His prayer was for judgment against both defendants for $1,300 and interest and costs.

The so-called deposit book, attached as "Exhibit A," is a book about 3 by 3½ inches. In the front inside cover are printed certain rules, and in the back is a printed certificate of stock. Bound into the book are lined and ruled sheets so arranged as to show dates of deposits and withdrawals and balances, and showing that on April 4, 1933, a deposit of $1,300 was made. The certificate of stock is to the effect that the person whose name is written on the cover (presumably plaintiff's name, although the exhibit as printed in the abstract does not show the outside cover) is a member of defendant association and owner of —— shares of class H deposit stock of said association of the par value of one hundred dollars per share, and recites:

"The holder of this certificate accepts the same upon the above terms and conditions, the rules printed in this book, and the following section of the by-laws:

"Article 2. Section 5. Class H deposit stock may be issued for one or more fractional shares, and the members be entitled to deposit any sum, at any time in payment thereon. This stock shall be governed by rules and regulations to be established by the board of directors from time to time, not inconsistent with these by-laws, or the laws of the state of Kansas. Dividends on this stock at rates to be determined by the board of directors, shall be declared semiannually, and credited or paid in January and July of each year."

Rule 2 reads as follows:

"A shareholder may withdraw a part of the accumulations to his credit without thereby reducing the number of shares held by him. All withdrawals must be made by the shareholder only or some person legally authorized, and only upon presentation of pass book."

And rule 3 reads:

"The association will pay withdrawals upon application, but reserves the

right to require thirty days' notice. (While under the by-laws and the state law, notice of withdrawal can be required, and while during financial panics or in stringent times members may be obliged to wait their turn, these restrictions are seldom enforced.)"

To the above petition the defendants demurred on the grounds of misjoinder of causes of action, and that facts sufficient to constitute a cause of action were not stated. The trial court sustained the demurrer on the second ground, and plaintiff appeals.

We may first observe that the allegation plaintiff was induced to complete payments on and mature his stock by reason of false statements made to him about September, 1932, is not material in view of his later allegations that on April 2, 1933, the association had funds with which to pay him. The principal question presented is whether the allegations of the petition, coupled with the statements in the book called by him a "deposit book," constituted plaintiff a creditor of the association, or a shareholder in it. Lacking the elements of fraud, a converse situation was presented in *Loan Association v. Merriman*, 67 Kan. 779, 74 Pac. 256. Over a period of years Merriman had paid to the association sums of money, receiving for each payment a printed document signed by the secretary, denominated "certificate of deposit" and evidencing deposit of money payable on return of the certificate. Interest was provided. Across the end was a printing headed "Certificate of Stock" certifying that Merriman was a member of the association. The association notified him to withdraw. Upon his refusal, the action was filed to recover one year's return on his investment, the association contending he was a depositor to whom it could return his money at will, or if he had been technically a stockholder, his stock was matured and his relation to the association was merely that of a creditor. In disposing of the case, it was held:

"One who invests money in a building and loan association, receiving as evidence of his investment a document in two parts, one in the form of a certificate of deposit for the amount paid, drawing annual interest based on the earnings of the business, the other in the form of a certificate that he is a member of the association and the owner of a share of its stock, is a stockholder and not merely a creditor, unless the by-laws forbid such conclusion; and *held*, that the by-laws of the association here involved do not forbid it." (Syl. ¶ 1.)

And in the opinion it was said:

"It frequently has been held that, in the absence of statutory prohibition, building and loan associations may issue paid-up stock, and that the holders are members and not merely creditors. (Citing cases.)" (p. 785.)

In *Abrahams v. Medlicott*, 86 Kan. 106, 119 Pac. 375, it was claimed that the building and loan stock involved was not a credit within the meaning of the taxing laws, it being said in the opinion:

"Thus it appears that this stock really represents the holder's interest in the corporation, differing from other classes of stock in respect to the holder's share of the annual earnings, and to the right of withdrawal upon the conditions named, and the right of the corporation to retire the stock. The holder is, however, a member of the corporation, with a voice in its management and a share in its liabilities." (p. 110.)

Appellant seems to rely on his allegation that he was making an investment. But what did he allege? That when his shares matured he wanted his money, the association being in funds to pay; that the secretary wanted him to reinvest and told him he could place the money on deposit with the association and could draw on the deposit the same as if it were in a bank, that he could add to or withdraw from the balance and at the end of any six-months period receive five per cent interest; that the association and Atkins knew they had no authority to accept the deposit, but plaintiff, relying on the statements, deposited $1,300 and received the "deposit book" which was handed to plaintiff "face open" and he did not examine it. From this he concludes the association and Atkins acted unlawfully and that the money did not become a part of the capital or assets of the association, but is a trust fund for his use and benefit.

Putting aside plaintiff's conclusions that the taking of the money was beyond the authority of the association, and that its receipt therefore made it a trust fund, we have left only the allegation that the secretary informed him he could place the money on deposit, and add to or subtract from his balance, on which he would be paid interest. While he argues that the association could borrow money (R. S. 1933 Supp. 17-1018), and that is conceded, there is no allegation of a loan, nor that one was intended. When the transaction was being completed, plaintiff received the "deposit book." He seeks to avoid its force and effect by saying it was handed to him face open, and that he did not examine it. Does that make the transaction fraudulent? The book, showing notation of the amount paid, contained his certificate of stock and the rules of the association pertinent thereto and shows clearly that he became a shareholder of class H deposit stock, entitled to deposit any sum at any time thereon. Under rule 2 he could withdraw a part of his ac-

cumulations. Rule 3 stated the association would pay withdrawals upon application, but reserved the right to require thirty days' notice. While he does not allege anything with respect to notice being required, he alleges he had been a shareholder who had matured $2,000 worth of installment shares, so he knew of the by-laws and statutes with respect to withdrawals. It is only in respect to withdrawals that the statements in the "deposit book" vary from what he says was told him, and that he would have discovered had he read the certificate and rules therein. Neither can it be said that this was not according to statutory provisions. R. S. 17-1016 provided that a shareholder wishing to withdraw might, subject to the by-laws and his certificate of stock, and the limitations prescribed in the statute, have power to do so upon giving one month's notice. This above statute was amended by section 2 of chapter 147 of the Laws of 1933, effective March 2, 1933 (R. S. 1933 Supp. 17-1016), and was in effect when the transaction here complained of took place. One of the effects of the amendment was to eliminate the thirty-day notice requirement, leaving withdrawals subject to the by-laws, certificate, and the limitations prescribed in the statutes. We are not now concerned with such statutory limitations. As we view the petition, the allegations therein with reference to the power of the association to receive money on deposit, and that the association acted without authority of law and had no right to accept deposits subject to check or withdrawable upon demand, and that the moneys coming into the hands of the association are trust funds, are conclusions of law and not of fact, are not admitted by the demurrer and are not to be considered in determining the sufficiency of the petition. Stripped of these allegations, and that of claimed fraud with respect to the shares matured by him prior to the instant transaction, there is nothing left that constitutes a cause of action.

The judgment of the trial court is affirmed.