### RED BANK BUILDING & LOAN ASS'N v. ALLING.

District Court, D. New Jersey.

Sept. 11, 1937.

Quinn, Parsons & Doremus, of Red Bank, N. J. (Theodore D. Parsons, of Red Bank, N. J., of counsel), for complainant.

Leo J. Warwick, of Long Branch, N. J., for defendant.

FORMAN, District Judge.

This is an action brought on the equity side of this court by the plaintiff (at times hereinafter referred to as the "Association") for the purpose of compelling the defendant (at times hereinafter referred to as the "Receiver") to pay from his trust the sum of $32,956.80, representing the withdrawal value of certain shares of the Association paid by it to the Reconstruction Finance Corporation, so that the Association may be in a position precisely as though it had set off moneys on deposit to its credit in the Receiver's Bank against the withdrawal value of its shares.

The facts in this case are set forth in the following stipulation entered into between the parties to this cause:

"The complainant and the defendant and their respective solicitors do hereby stipulate and agree that the following facts shall be taken as proven in the case and this stipulation as to facts shall have all the force and effect of formal evidence.

"1. The Red Bank Building and Loan Association was formed and organized under the law of the State of New Jersey on March 22nd, 1887 and has its principal place of business in the Borough of Red Bank, Monmouth County, New Jersey.

"2. The Red Bank Building and Loan Association has functioned from the date of its incorporation to the present day and particularly during the period of time covered in this action.

"3. The Red Bank Building and Loan Association has operated in accordance with its constitution, by-laws and charter and the laws of the State of New Jersey.

"4. Under the constitution and by-laws of the Red Bank Building and Loan As-

sociation each member of the association was vested with the right of withdrawing the funds which he had paid into the association upon giving thirty days' notice to the association.

"5. The Broad Street National Bank of Red Bank was a corporation of the United States of America and had its principal office in Red Bank, and was engaged in the banking business at all times covered in this action and until March 4, 1933.

"6. The Red Bank Building and Loan Association deposited its funds with The Broad Street National Bank with whom it transacted all its banking business.

"7. On October 6th, 1932, The Broad Street National Bank owned two hundred and forty-five shares of stock of the Red Bank Building and Loan Association, of which fifty shares were in the thirty-seventh series, ninety shares in the thirty-eighth series, one hundred shares in the fortieth series and five shares in the forty-third B. series. All of these shares were registered in the name of The Broad Street National Bank upon the books of the Red Bank Building and Loan Association.

"8. On October 6th, 1932, The Broad Street National Bank during the banking crisis in Monmouth County, borrowed from the Reconstruction Finance Corporation $247,800.00 and to secure this loan pledged customers' notes and other assets with the Reconstruction Finance Corporation, among which assets were the shares of stock the Red Bank Building and Loan Association owned by The Broad Street National Bank and registered in its name upon the books of the Red Bank Building and Loan Association.

"9. To secure the sum of $247,800.00, The Broad Street National Bank executed a note evidencing its indebtedness, a true copy of which is annexed hereto and marked Exhibit A. The assets, notes and securities which were pledged with the Reconstruction Finance Corporation consisted of one hundred and eighty-two items totaling the aggregate of $539,881.45.

"10. On February 10th, 1933, the Reconstruction Finance Corporation applied for the withdrawal value of the shares of stock set forth in paragraph #7. The application was made by the President of The Broad Street National Bank on behalf of the Reconstruction Finance Corporation.

"11. The Red Bank Building and Loan Association, at a meeting of its Board of Directors held on March 14, 1933, accepted

the application for the withdrawal value and it was placed upon the list of withdrawals to be paid in its turn when reached. When this application for withdrawal value was filed and accepted by the Red Bank Building and Loan Association, the Red Bank Building and Loan Association thereupon on March 14, 1933, became obligated to pay to the Reconstruction Finance Corporation the withdrawal value of the shares of stock.

"12. On March 4, 1933 The Broad Street National Bank closed in pursuance to proclamation of the Governor of the State of New Jersey declaring a state bank holiday. On March 6, 1933 the national bank holiday was declared by proclamation of the President of the United States and The Broad Street National Bank remained closed during the period covered by said proclamation. The said bank failed to receive a license to resume normal operation at the termination of the national holiday on March 15th, 1933. On March 28th, 1933 Newton D. Alling was appointed conservator of said bank.

"13. On April 15th, 1933, Newton D. Alling, who had remained until that time as conservator, was appointed receiver of The Broad Street National Bank which was placed in liquidation.

"14. On March 4th, 1933 the Red Bank Building and Loan Association had on deposit in The Broad Street National Bank in three separate accounts the following sums of money: Red Bank Building and Loan Association $18,426.63; Red Bank Building and Loan Association liquid investment fund $31,383.15; Red Bank Building and Loan Association, Howard S. Higginson, Trustee, trustee account $1,118.-40; which deposits totaled $50,928.18.

"15. Debtors of the Bank who had free deposits and free assets were permitted, where there was no question of identity of entities and of the existence of mutual obligations, to off set against their indebtedness to the bank their deposits in the bank. No off sets, however, were allowed, or granted on notes, securities or other obligations while the same were pledged with the Reconstruction Finance Corporation.

"16. Between March 4th, 1933 and October 14th, 1933, various sums of money were paid by debtors whose notes had been pledged with the Reconstruction Finance Corporation. A total of thirty-two of these notes, aggregating $60,106.33, were paid in full by debtors to the Reconstruction Finance Corporation. Although among these thirty-two debtors were deposits aggregating $3,736.07, none of these thirty-two debtors received any off sets for their deposits. (The defendant objects to the materiality and relevancy of the facts set up in this paragraph to the issues involved.)

"17. One hundred and fifty notes of obligors which were still unpaid on October 14th, 1933 were returned to the receiver of the Broad Street National Bank and in proper cases of mutuality and identity of parties, off sets were allowed against such amounts as the makers of said notes had on deposit in the bank. The total number of notes upon which off sets were allowed is seventy-two, aggregating in face value $205,855.00 against which off sets were allowed aggregating $38,482.89. (The defendant objects to the materiality and relevancy of the facts set up in this paragraph to the issues involved.)

"18. At the time that Newton D. Alling was appointed receiver, The Broad Street National Bank remained indebted to the Reconstruction Finance Corporation, which held as collateral for the indebtedness the assets which had theretofore been pledged, among which assets were the shares of stock in the complainant association.

"19. When The Broad Street National Bank was placed in liquidation by the Comptroller of the Currency, the Reconstruction Finance Corporation thereupon endeavored to reduce the securities and assets pledged with it by the bank to cash, to satisfy the indebtedness of The Broad Street National Bank. The Reconstruction Finance Corporation sent as its agent one Hardifer who came to the bank daily for the purpose of arranging with the debtors of the bank for payment and demanded from the debtors payments on account of their indebtedness. He notified the Red Bank Building and Loan Association that it must pay to the Reconstruction Finance Corporation the monies due upon the withdrawal value of the shares because the Reconstruction Finance Corporation held the shares as a pledge for the indebtedness of The Broad Street National Bank and that no set off could be allowed for any deposits while the shares were held by the Reconstruction Finance Corporation.

"20. The Reconstruction Finance Corporation constituted Newton D. Alling as its agent to collect and forward to the Re-

construction Finance Corporation the proceeds of notes which the corporation held as a pledge to secure the advance to the bank to the end that the indebtedness of The Broad Street National Bank to the Reconstruction Finance Corporation might be paid.

"21. Newton D. Alling acted as the agent of the Reconstruction Finance Corporation in the collection of these funds which as collected were forwarded to the Reconstruction Finance Corporation to satisfy the indebtedness to the Reconstruction Finance Corporation.

"22. On May 23rd, 1933, after the demand of Mr. Hardifer, the Red Bank Building and Loan Association, paid the sum of $32,956.80 to the Reconstruction Finance Corporation. On May 23rd, 1933 the Red Bank Building and Loan Association had on deposit with the receiver of The Broad Street National Bank the sum set forth in paragraph fourteen.

"23. By virtue of the by-laws and constitution of the Red Bank Building and Loan Association and of the statutes of the State of New Jersey, the Red Bank Building and Loan Association, *by reason of the withdrawal application theretofore filed,* was obligated to make such payment to the holder of the shares of stock which holder was the Reconstruction Finance Corporation who was solely entitled to such payment. Payment was made to the Reconstruction Finance Corporation. (Italics ours)

"24. On October 14th, 1933, Newton D. Alling paid in full to the Reconstruction Finance Corporation all monies owed to it by The Broad Street National Bank of Red Bank and Newton D. Alling thereafter received from the Reconstruction Finance Corporation all the collateral which it then had in its possession.

"25. In February, 1934, the Red Bank Building and Loan Association demanded that Newton D. Alling set off against its deposits the amount which it had paid, namely, the sum of $32,956.80 and by its solicitor, Howard S. Higginson, on March 19th, 1934 made formal demand in writing for the allowance of such set off.

"26. The receiver, Newton D. Alling, refused to honor the demand for the set off.

"27. On July 30th, 1934, a dividend of thirty-five per cent. was declared by Newton D. Alling as receiver, payable to those depositors who had free accounts. The depositors cannot be paid in full by the receiver from the assets of the Trust.

"[Signed] Quinn, Parsons & Doremus,
"Attorneys for Complainant.
"[Signed] Leo J. Warwick,
"Attorney for Defendant."

Defendant cites the following letter which he says constituted the "formal demand in writing" of March 19, 1934, mentioned in paragraph 25 of the stipulation and which he avers was inadvertently omitted from the stipulation. Plaintiff, of course, objects to the use of the letter, but his reasons do not go to the genuineness of the letter, and I regard the same as properly before the court. There is no reason why this or any other fact about the case should be suppressed. The letter follows:

"Red Bank Building & Loan Association
"Red Bank       New Jersey
"March 19, 1934

"Mr. Newton D. Alling, Receiver
"Broad Street National Bank,
"Red Bank, N. J.
"Dear Mr. Alling:

"In the month of February, 1933, the Broad Street National Bank, being the record owner of 50 shares of the 37th Series, 90 shares of the 38th Series, 100 shares of the 40th Series, and 5 shares of the 43-B Series of Red Bank Building and Loan Association, made application to surrender all of said shares and receive the proceeds thereof. The application was presented at a meeting of the Directors of the Association held March 14th, 1933, and granted. Withdrawals were being honored by the Association in order of presentation and the application of the Bank, having been granted, was placed on file to await its turn.

"In the month of April, 1933, the Broad Street National Bank was placed in Receivership, but it was the general belief that certain plans for reopening the Bank would be successful, that the Receivership would shortly terminate and the Bank resume business.

"On May 22, 1933, the application for surrender of stock as above noted was reached in turn and as a matter of routine business the disbursing officers of the Red Bank Building & Loan Association drew the order pertaining thereto and delivered same to you as Receiver, said order being the amount of $32,956.80 payable to Broad Street National Bank, Newton D. Alling,

Receiver, and representing the full withdrawal value of said shares of stock. In due course this order was honored by the Association and paid in amount as above.

"At the date of payment as above the Red Bank Building and Loan Association had and still has on deposit in the Broad Street National Bank funds in amount of $49,809.78 against which deposit the surrender value of said stock should have been off set and not disbursed by said Association to the Bank as above recited. Inadvertently and further because of the fact that it was the general opinion and belief that the Bank *would shortly resume business, such offset was not claimed and the urgent necessity of requesting such offset was not then apparent.*

"By reason of subsequent developments and the continuance of the Receivership *it is now apparent* that the Association *should have requested the offset above mentioned and it does now,* in justice to its numerous stockholders, request same and that the proper adjustment be made in accordance therewith by you as Receiver of said Bank.

"In consideration of the above and as further evidence of the belief that plans for reopening the Bank would prove successful, it should be noted that the Association in a spirit of cooperation has since April, 1933, honored and paid to you as Receiver surrenders of stock presented by the Bank in excess of $50,000.00 without request for offset against its deposit.

"Very truly yours,
"[Signed]   H. S. Higginson,
"Solicitor"

The Association brings this action under the theory that it has a right to an equitable set-off. Such a doctrine is a fundamental equitable form of relief, and the Association cites a number of decisions in which courts have given such aid in circumstances somewhat similar but never identical with the facts in the case at bar.

The Receiver asserts that such relief should not be granted this Association because it alleges that the payment was of a purely voluntary nature made by the Association without any protest or demand for its set-off.

He alleges that the Reconstruction Finance Corporation received only an assignment of the shares of the Bank in the Association. This was not in the form of a negotiable instrument, but was such an assignment placing the Reconstruction Finance Corporation in no better shoes than those of the Bank and that the Association could have claimed its set-off equally as well against the Reconstruction Finance Corporation by way of defense to any suit which might have been brought against it by the corporation as if the Bank had sued the Association.

Such may have been the case, but the facts are different. Section 19 of the stipulation herein says: "The Reconstruction Finance Corporation sent as its agent one Hardifer who came to the bank daily for the purpose of arranging with the debtors of the bank for payment and demanded from the debtors payment on account of their indebtedness. He notified the Red Bank Building & Loan Association that it must pay to The Reconstruction Finance Corporation the moneys due upon the withdrawal value of the shares because The Reconstruction Finance Corporation held the shares as a pledge of The Broad Street National Bank and that no set off could be allowed for any deposits while the shares were held by The Reconstruction Finance Corporation." That is where the trouble started. For some reason or other the Association accepted the ultimatum of the agent, Hardifer, and on May 23, 1933, paid over to him the sum of $32,956.80, while at the very moment it had to its credit in three accounts in the Bank a sum in excess of $50,000.

In the face of the statements in the stipulation and in the letter of March 19, 1934, it is, indeed, difficult to explain this docile surrender by the Association of this large amount of money without first obtaining an adjustment of moneys due to it from a closed bank, or at least an attempt to press the Receiver, who was then in charge, into some sort of a commitment as to its rights in those funds as related to the demand of the Reconstruction Finance Corporation. It is necessary to recall the fog that hung over all of those engaged in the financial world at that particular time, and then in some degree it is possible to appreciate that probably the executives of this Association were enveloped in the haze also and were too dazed to perform in a normal manner.

The Receiver argues that in the final analysis this would have availed the Association nothing because to entitle it to a set-off as against the Bank there must have been a mutuality of obligations between the Association and the Receiver.

Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059.

He says that the demand for the withdrawal value of the shares was made by the Reconstruction Finance Corporation on February 10, 1933. It was not acted upon by the Association until March 14, 1933. The bank holiday became effective March 4, 1933, and as far as this particular Bank is concerned it still continues. He was appointed Conservator on March 15, 1933, and as Receiver on April 15, 1933, but at the time of the bank's closing, viz., March 4, 1933, he says there was no mutuality because there was no debt due by the Association. The Receiver avers that the earliest date that such a status could be ascribed to the Association was upon its acceptance of the application for withdrawal value, namely, on March 14, 1937. He calls attention to New Jersey cases (Thirteenth Ward Building & Loan Association v. Weissberg, 115 N.J.Eq. 487, 170 A. 662, 98 A.L.R. 134 and Newark Twenty-one Building & Loan Association v. Zukerberg, 115 N.J.Eq. 579, 171 A. 804) in which the right of members of building and loan associations to withdrawal of the value of their shares was defined and limited. However, these decisions were directed to the right of associations' directors to control the application of profits on shares, rather than to a discussion of the basic right of withdrawal upon the part of the member consistent with the statute or building and loan association contract or charter authorizing such withdrawals.

Here paragraph No. 23 of the stipulation provides: "By virtue of the by-laws and constitution of the Red Bank Building and Loan Association and of the statutes of the State of New Jersey, the Red Bank Building and Loan Association, *by reason of the withdrawal application theretofore filed,* was obligated to make such payment to the holder of the shares of stock which holder was the Reconstruction Finance Corporation who was solely entitled to such payment. Payment was made to the Reconstruction Finance Corporation." (Italics ours)

There can be no question but what a mutuality of obligation existed between the bank and the Association on March 4, 1933, and that had there not intervened the circumstances of the Reconstruction Finance Corporation holding the assignment of the shares by the Bank, and if the transactions had been purely between Association and Bank or its Receiver, the Association would have been entitled to a set-off.

■ The Receiver makes the further point that the cases cited by the Association relate to situations where the collateral given by the debtor bank has been in the nature of negotiable instruments, rather than a nonnegotiable security as the assignment of the shares of the Association was in the instant case. He says that in such cases the plaintiff, or person in the similar position as the Association is here, had no choice but to meet the demand; but in this case the situation was different because the Reconstruction Finance Corporation held a nonnegotiable instrument as collateral and the same was subject to the same defenses at the instance of the Association as could be raised successfully against the Bank itself.

The Receiver further says that this case is distinguished from others cited because here there was no mistake of fact to justify the Association from claiming its set-off at such a late date and no protest at the time of payment, but that there was full undersanding and a waiver.

With this view the court cannot concur. It is impossible to believe that these officers of the Association knowingly and willfully forebore for no reason at all to claim protection for their trust. What seems much more probable was that in the terrific tempo of those times the Association was disarmed by the representations of the Reconstruction Finance Corporation's agent, Mr. Hardifer, and was misled by him into the thought that it had no right of set-off. We say this with the reservation that Mr. Hardifer was acting in the best of good faith and really believed that his pronouncement was factually and legally dispositive of the Association's claim to a set-off, because we do not desire to charge him with a malicious misdirection of the Association. Then, too, it is to be remembered that there was an extremely close association of identity of persons representing the Bank and the Reconstruction Finance Corporation. Mr. Alling was not only the Conservator and Receiver of the Bank, chargeable with full knowledge of the state of accounts between the Association and the Bank, but was also appointed by the Reconstruction Finance Corporation as its agent to collect and forward to it the proceeds of notes and these funds. All parties involved—the Receiver, the

Reconstruction Finance Corporation, and the Association—knew all of the circumstances by way of actual knowledge, or at least should have known, and yet the transfer of the moneys was consummated. The fact of the notification of the Association by Agent Hardifer that no set-off could be allowed for any deposits of shares while with the Reconstruction Finance Corporation implies both demand and protest by the Association, and negatives the idea that it placidly waived its rights and thereby the interest of its membership in and to the sizeable sum of money involved in this litigation.

There is but one real issue involved here, and that is: Has the status of anyone changed by reason of the failure of the Association to more aggressively prosecute its claim for set off?

From the stipulation it appears that: "Debtors of the Bank who had free deposits and free assets were permitted, where there was no question of identity of entities and of the existence of mutual obligation, to off set against their indebtedness to the bank their deposits in the bank. No off sets, however, were allowed, or granted on notes, securities or other obligations while the same were pledged with The Reconstruction Finance Corporation."

"Between March 4, 1933 and October 14, 1933, various sums were paid by debtors whose notes had been pledged with The Reconstruction Finance Corporation. A total of thirty-two of these notes, aggregating $60,106.33 was paid in full by debtors to the Reconstruction Finance Corporation. Among these were thirty-two debtors with deposits aggregating $3,736.07; none of these debtors received any off sets for their deposits."

"One hundred and fifty notes of obligors which were still unpaid on October 14, 1933, were returned to the receiver of the Broad Street National Bank and in proper cases of mutuality and identity of parties, off sets were allowed against such amounts as the makers of the said notes had on deposit in the bank. The total number of notes upon which off sets were allowed is 72, aggregating in face value $205,855.00 against which off sets were allowed aggregating $38,482.89."

The Receiver argues that his position has been changed and that this alteration of his status prohibits relief to the Association now. He says that after the other collateral was returned to him he allowed offsets to those who were entitled to them, and "if the complainant had been entitled to an off set there would have been a pro rata distribution of off set so that only the debtors whose debts had also been pledged with the complainant to the Reconstruction Finance Corporation would have been called upon to prorate the allowable off sets." That "when complainant (the association) allowed Receiver to believe no off set was expected and when complainant failed to act in such a way that its right could be defined it was reasonable to assume that complainant had no rights."

All offsets were then granted to others. He says that: "These off sets would now be reversed if a recovery is allowed. A reversal of the off sets would require suits to recover back the evidences of debt which were paid off by allowance of off sets, dividends paid on deposits in excess of offsetable debts, accounting, possibilities of suit for off sets on the part of 32 debtors who paid to Reconstruction Finance Corporation voluntarily as did complainant and an entire reversal of dividends heretofore issued."

But this does not demonstrate that the Receiver, per se, individually or officially, would be affected by allowance of the offset to the Association. The facts are the Reconstruction Finance Corporation was entitled to be paid the sum of $247,800. This it received in three forms of payments, namely,

a. From the association, while it had on deposit with the bank the sum of $50,928.18, a payment equally to the withdrawal value of shares in the sum of $32,956.80.

b. From thirty-two debtors of the bank, whose aggregate deposits at the time amounted to $3,736.07, it received the sum of $60,106.33.

c. From the Receiver of the bank on October 14, 1933, the balance of the moneys due and owing by the bank, whereupon the Reconstruction Finance Corporation delivered to the Receiver all collateral then remaining in its possession.

The Reconstruction Finance Corporation was paid in full, as it was ultimately bound to be because it had collateral valued at twice the amount of its loan. It made no difference to the Receiver whether the debt to the Reconstruction Finance Corporation was satisfied by a payment from him, or in part by payment by the Association of the withdrawal

value of the shares which had been assigned to the Reconstruction Finance Corporation together with such collections as the Corporation made from notes in its hands as collateral.

Although the letter of March 19, 1934, followed the oral notice of February, 1934, that the Association demanded a set-off, this suit was not instituted until December 21, 1934. The Receiver paid his 35 per cent dividend to depositors on July 30, 1934.

Those persons who received the benefit of set-offs were entitled to them and cannot now be deprived of them.

The only change in status can come to the depositors who have received a dividend of 35 per centum. To recapture from these creditors of the bank advantages which they have received while the Association "slept" on its rights would alter their status indeed. However, only these are to be preferred in equity over the claim of the Association.

There are no facts before me to indicate what assets still remain in the hands of the Receiver which are or will be available for distribution generally. But whatever these amount to, they should be stamped with the lien of the claim of the complainant herein for a set-off in the sum of $32,956.80. Its credit for deposits in the aggregate sum of $50,928.18 will be reduced in that sum, and it will be considered a depositor creditor for the balance, subject, of course, to adjustment for any dividend which has been credited to the Association and which it has received calculated upon its deposit in the sum of $50,928.18. If the estate of the Receiver cannot make this payment by reason of an insufficiency of assets remaining in his hands, then let him pay against the amount of $32,956.80 in so far as his assets will permit.

It is inequitable to compel the Association to forego its right to a set-off simply because the bank was obliged to borrow upon the value of the shares of the Association held by it, particularly while any assets remain undistributed by the Receiver.

It is true that in this manner the depositors may be deprived of further dividends. The stipulation indicates that in no event are they expected to be paid in full. But if the Association's claim for set-off had been allowed earlier, their recovery on the deposits would have been reduced pro tanto. Therefore, they will not be injured.

This leaves the thirty-two debtors of the bank who, like the Association, were deprived of set-off for their aggregate deposits which amounted to $3,736.07.

Since they have been less diligent than even the Association, and are not here in suit, concern need not now be expressed for them.

A decree will be taken in conformity with this opinion which is designed to meet the requirements of Equity Rule 70½ (28 U.S.C.A. following section 723), regarding the filing of findings of fact and conclusions of law.