No. 34,204

The Independence Savings and Loan Association, *Appellant,*
v. Edith M. Sellars, and Edith M. Sellars, Guardian of
Fred Sellars, Jr., et al., *Appellees.*

(88 P. 2d 1059)

Opin-
ion filed April 8, 1939.

*Claud J. Bryant* and *W. J. Burns,* both of Independence, for the appellant.
*C. W. Brenneisen, Jr., Norman B. Sortor* and *Wash H. Brown,* all of Kansas
City, for the appellees.

The opinion of the court was delivered by

Wedell, J.: This was an action by The Independence Savings
and Loan Association, to foreclose a real-estate mortgage and to
permit it to apply upon the mortgage debt the withdrawal value
of certain shares of association stock purchased by the defendant,
Edith M. Sellars, and not pledged to the payment of the mortgage
debt. The defendants prevailed, and plaintiff appeals.

The defendants were Edith M. Sellars, one of the mortgagors,
Fred Sellars, Jr., and Edith M. Sellars, guardian of Fred Sellars, Jr.
Fred J. Sellars, husband of Edith M. Sellars, died subsequent to the
execution of the mortgage. Edith M. Sellars and Fred Sellars, Jr.,
were the owners of the mortgaged real estate.

Two defenses were asserted. The first was the withdrawal value
of the stock, $940, was exempt to the defendant, Edith M. Sellars,

by reason of the fact that stock was purchased with the proceeds of a life insurance policy of her deceased husband, in which policy Edith M. Sellars was the beneficiary. The second defense was that, aside from the exempt character of the fund, the money had been deposited in the plaintiff association as a payment upon the stock, and plaintiff was not entitled to credit the withdrawal value of the stock on the mortgage debt.

The parties stipulated as follows:

"1. That Fred J. Sellars and Edith M. Sellars, on the first day of May, 1928, executed note and mortgage for the sum of five thousand dollars ($5,000), as set out in plaintiff's petition.

"2. That on the eleventh day of January, 1931, Fred J. Sellars died and left surviving him his sole heirs, Edith M. Sellars, widow, Walter O. Sellars, Anna Marie Sellars Benneissen and Fred Sellars, Jr., and thereafter Walter O. Sellars and Anna Marie Benneissen sold and conveyed their interest in the property herein involved to Edith M. Sellars; that Fred Sellars, Jr., is a minor and that Edith M. Sellars is his duly acting and qualified guardian.

"3. That there was due on said note and mortgage on January 1, 1933, the sum of $4,071.39 and $82.49 interest.

"4. That said note provides that on default it shall draw interest at ten percent per annum.

"5. That the defendant, Edith M. Sellars, received one thousand dollars ($1,000) from proceeds of life insurance of Fred J. Sellars, deceased, her husband, and deposited the same in the Independence State Bank, and thereafter and on the 15th day of May, 1931, she withdrew the said sum from the Independence State Bank and purchased twenty shares of deposit stock in the plaintiff association, and received passbook and certificate No. 2880.

"6. That there has been credited as dividends upon said stock the sum of $65.15, and the said defendant, Edith M. Sellars, has withdrawn the sum of $35.15 on May 1, 1932; $60 on September 17, 1932, and $30 on October 11, 1932, and that there is a balance of $940 to her credit on said account.

"7. That thereafter and on the 12th day of January, 1932, she filed application for withdrawal of said stock with the plaintiff, the passbook and application to withdraw are attached to this stipulation; that Edith M. Sellars is the owner of five-sixths interest in said property and that Fred Sellars, Jr., is the owner of one-sixth interest in said property."

The passbook contained an unexecuted certificate and in addition to the deposits and withdrawals heretofore mentioned, read:

"CERTIFICATE OF STOCK

"This certifies that the person whose name is written on the cover hereof is a member of The Independence Savings and Loan Association of Independence, Kan., and is the owner of ——— shares of class F deposit stock of said association, of the par value of one hundred dollars per share. The certificate to receive out of the earnings of the association interest at the rate of six percent per annum on the amount paid in, and in case the earnings of the association

are not sufficient to pay such rate, in consideration of a guarantee of such interest by the permanent stock, the holder hereof hereby agrees to waive his right to any earnings in excess of six percent.

"The holder of this certificate accepts the same upon the above terms and conditions, the rules printed in this book, and the following section of the bylaws:

"Article V, section 8, class F installment stock may be issued for one or more fractional shares, and the members be entitled to deposit any sum, at any time, in payment thereon. This stock shall be governed by rules and regulations to be established by the board of directors from time to time, not inconsistent with these bylaws, or the laws of the state of Kansas. Dividends on this stock at rates to be determined by the board of directors shall be declared semiannually, and credited or paid in January and July of each year.

"Holders of this stock shall be entitled to borrow the par value thereof on first-mortgage real-estate security in Independence, or on farms in Montgomery county, or immediately adjoining counties."

The passbook also contained the following pertinent rules:

"2. Payments upon deposit shares shall continue in such sums and at such times as the holder may elect until such payments, together with dividends credited, shall equal the par value, when the shares will be deemed to have matured. . . .

"3. A shareholder may withdraw a part of the accumulations to his credit without thereby reducing the number of shares held by him. . . .

"4. The association will pay withdrawals upon application, but reserves the right to require thirty days' notice. (While under the bylaws and the state law, a notice of withdrawal can be required, and while during financial panics or in stringent times members may be obliged to wait their turn, these restrictions are seldom in force.)

"5. Whenever the shares of all other classes in any series have been withdrawn or matured, the association may, at its option, transfer the certificate represented by this passbook to the current series."

Pertinent provisions of the bylaws, also admitted by stipulation, provide:

"ARTICLE IV

"SECTION 1. Any person, firm or corporation may become a member of this association by subscribing for one or more shares of its capital stock, paying the entrance fee, and agreeing to comply with the requirements of the bylaws. . . .

"WITHDRAWAL

"SECTION 3. Any shareholder may withdraw from this association any or all the shares held by him, upon giving one month's notice in writing, of such intention, to the board of directors, who shall repay, or shall cause to be repaid to such shareholder the amount of dues actually paid in, with accrued profits and dividends as shown on his or her passbook, excepting the profits and dividends of the half year in which he withdraws, and less all charges that may be due on such stock. At no time, however, shall more than one-half of the

receipts of the association, for any fiscal month, and when the association is indebted on matured shares of an earlier series, not more than one-third of said receipts be applicable to the demands of the withdrawing shareholders, or of shareholders whose stock has been forfeited in the manner hereafter provided, without consent of the board of directors, and when the demands of the withdrawing shareholders exceed the money applicable to their payment, they shall be paid in the order in which their notice of withdrawal shall have been filed with the association.

"ARTICLE V

"SECTION 1. The capital stock of this association is $1,000,000, divided into series; the first series to consist of all stock issued as of and including the 15th of January, 1917, and subsequent series to consist of 3,000 shares each. Of authorized capital stock, there shall be issued $25,000 permanent stock, to be designated as class A. The par value of such shares shall be $100. Shares, however, may be issued in fractional amounts. The class stock may be issued as class B full-paid stock; class C prepaid stock; class F deposit stock; class G rural-credit full-paid stock; class H rural-credit installment stock; class J installment stock; class K loan stock; and such other classes as the board may authorize.

"CLASS F, DEPOSIT STOCK

"SECTION 8. Class F, deposit stock, may be issued for one or more shares, and the members entitled to deposit any sum, at times most convenient to the holders of such stock. Deposit stock shall be governed by rules to be established by the board of directors from time to time, and if left over three months the association pays such rate of interest out of the earnings of the association as may be authorized by the board of directors, not exceeding five percent per annum. Interest payable on the first day of January and July of each year."

The trial court made findings of fact which embraced pertinent stipulated facts, and the court found further that the $940 withdrawal value of the deposit stock was the proceeds of the life insurance on the life of Fred J. Sellars, deceased, and was exempt, and that plaintiff was not entitled to set off that amount against the mortgage debt.

Appellant admits the proceeds from the life insurance policy were originally exempt to the beneficiary and continued to be so exempt at the time they were originally deposited in the bank (*Emmert v. Schmidt*, 65 Kan. 31, 68 Pac. 1072), but it insists the fund did not retain its exempt character indefinitely and especially after it was definitely invested in other property of nonexempt character. (*Pefly v. Reynolds, Sheriff*, 115 Kan. 105, 222 Pac. 121.) In the Pefly case it was claimed certain real estate purchased with the proceeds of a life insurance policy was exempt from execution. In that case both statutes, namely, G. S. 1935, 40-414 and 40-

711, pertaining to the exempt character of proceeds from life insurance policies, relied upon by appellee in the instant case, were considered, and it was held:

"Under statutes providing that life insurance policies, including fraternal beneficiary certificates, shall inure to the sole use of the beneficiaries and shall be free from all taxes and the claims of creditors of the persons named in such policies, and that the money paid by any fraternal beneficiary association shall not be appropriated by any legal or equitable process to pay any debt of the beneficiary, no exemption is created with respect to property purchased by the beneficiary with money paid upon a life insurance policy or beneficiary certificate." (Syl. ¶ 1.)

In the opinion it was said:

"The proceeds of one homestead which has been voluntarily conveyed are held to be exempt if held with a purpose of investment in another, but not otherwise. (*Smith v. Gore*, 23 Kan. 488.) Property is not ordinarily held to be exempt merely because it is the proceeds of that which was exempt. (11 R. C. L. 530; 25 C. J. 82, note 57.)" (p. 107.)

It is worthy to note that while the proceeds from the life insurance policy are also exempt from taxation under the exemption statutes above mentioned, the deposit stock here involved is expressly made taxable. (G. S. 1935, 79-325a.) While under that statute the stock is assessed against the building and loan association, it is clear the proceeds from the policy lost their tax-exempt character when invested in the stock. We think the fund lost its exempt character entirely after it was so invested.

Appellee further urges the proceeds from the policy were in reality merely deposits upon the stock and that the fund actually remained in her control, as it could be withdrawn upon notice. The proceeds of the policy were not merely deposited in the plaintiff association subject to withdrawal upon notice. Plaintiff expressly pleaded the deposit was made as a payment upon or for the stock, and indeed it was. The par value of the twenty shares was $2,000. The original payment thereon was $1,000. While some authorities prefer to call the purchaser of such stock a depositor rather than an investor, we think the deposit clearly constituted a payment on the stock and was in the nature of a deposit investment in the stock. It is also conceded the purchaser thereby became a shareholder in and a member of the association. The control of the withdrawal value of the stock was subject to the laws regulating shares in building and loan associations and to the bylaws of the association enacted in conformity therewith. The fund was not subject to

withdrawal upon demand as a deposit in a bank. The fact it was the kind of stock which might be purchased by making deposits on the purchase price thereof, did not transform the purchase of the stock into an ordinary deposit of money, and the case of *Emmert v. Schmidt,* supra, is not authority for the exempt character of the fund in question.

The next question is, Was appellant entitled to credit the withdrawal value of the stock, which stock was not pledged to secure the mortgage loan, on the mortgage debt? Appellant contends the court erred in refusing to make the application. It insists the relationship between it and the shareholder was that of debtor and creditor. It argues the relationship, in principle, is the same or analogous to that which exists between a bank and a depositor who is a debtor of the bank, and that the right of a bank to apply the deposit on the matured debt of such depositor is well established. We have already touched upon that subject and shall presently pursue it further. If, however, that contention of appellant were sound it would go far toward establishing the exempt character of the fund contended for by appellee. The contention, in our opinion, is not sound. It is well to remember at the outset that building and loan associations are prohibited by statute from engaging in the banking business, unless authorized by charter to do so. (G. S. 1935, 9-143a, 9-162.) In the instant case, it is not contended appellant was authorized to engage in the banking business. The status of a shareholder or stockholder in a building and loan association is not determined by the general banking laws, but by the laws pertaining to such associations. (G. S. 1935, 17-1047.) The first question confronting us is, therefore, whether the relationship between the association and the holder of this unmatured stock, in the solvent association, is in reality that of debtor and creditor. Appellant urges such was the relationship after appellee had applied for payment of the withdrawal value of the stock. The courts have not always been entirely consistent or logical in defining the status of a member who has given notice, and perfected his right to withdraw. (See Sundheim, Building and Loan Associations, 3d ed., § 163.) The confusion is due in part to varying statutes and bylaws. Some of the confusion also arises by reason of the insolvency of one of the parties to the litigation. Other apparent differences of view have resulted from the exact status of holders of matured and unmatured stock. In the instant case, however, the stock was not matured;

nor is there evidence of the insolvency of either of the parties. The stipulation discloses a shareholder would not be entitled necessarily to the immediate payment of the full withdrawal value of the stock even after maturity of demand for payment. If a shareholder is not entitled to receive such full payment, as a matter of right, then upon what theory is the association entitled to claim the full credit of the withdrawal value, as a matter of right, at any time it chooses to claim such credit? These questions, and others, are germane to a determination of the exact status of the parties. Where the rights of a shareholder or stockholder to receive payment are restricted, as in the instant case, he may be in a sense a special or qualified creditor, but that fact does not convert him into a general creditor. (*Home Bldg. & Savings Association v. Clay*, 188 Ark. 943, 949.) It would seem equally clear that the special or qualified liability of the association would not transform the association into a general debtor. In the Arkansas case cited it was said:

"The maturity of the stock and the demand for its payment would not serve to change the relationship from stockholder to general creditor as contended. Our conclusion in this respect has the support of the weight of authority, and in Pennsylvania and New Jersey, where the rule was first announced as contended for by the appellee, later decisions seem to have abandoned it. (*Fornatoro v. Atl. Coast, etc., Ass'n*, 10 N. J. Misc. 1248, 163 Atl. 240, and *Stone v. Schiller B. & L. Ass'n*, 302 Pa. 544, 153 Atl. 758.) In the last-named case, the early case of *U. S. B. & L. Ass'n v. Silverman*, supra, is repudiated. In *Heinbokel v. Nat. S. L. & B. Ass'n*, 58 Minn. 340, 59 N. W. 1050, 25 L. R. A. 215, 49 A. S. R. 519, referring to the doctrine that a stockholder ceases to be a member of the association after due notice of withdrawal, and may, upon refusal of payment, sue and recover judgment as any other creditor, it is said; 'But it is obvious that a stockholder who withdraws from one of these associations cannot properly be regarded as having the rights of the ordinary creditor, and this was admitted by the same learned court (Pennsylvania) in a later case (*Christian's Appeal*, 102 Pa. St. 189), in which it was frankly stated that there was manifest error in *U. S., etc., Ass'n v. Silverman*, 85 Pa. St. 394, in putting withdrawing stockholders in the position of general creditors. The conclusion in the case just mentioned loses potency when we discover that the reasoning is unsound.'

"As already stated, the later Pennsylvania and New Jersey cases have abandoned the rule laid down in the Silverman case, and have adopted the contrary view, which has the support of our own court in *Fort Smith B. & L. Ass'n v. Cohn*, 75 Ark. 497, 87 S. W. 1173. . . .

"The doctrine of these cases is that held by a majority of the courts. Among these are the following: *Fornatoro v. Atl. Coast B. & L. Ass'n*, supra, where the rule of the earlier New Jersey cases is modified; *Englehart v. Fifty Ward, etc., Ass'n*, 148 N. Y. 281, 42 N. E. 710, 35 L. R. A. 289; *Texas Home-*

stead *B. & L. Ass'n v. Kerr,* 13 S. W. 1020; *Publicker v. Pottash Bros., etc., Ass'n,* a late Pennsylvania case, 104 Pa. Super. Ct. 530, 159 Atl. 58; *Andrews v. Roanoke Bldg., etc., Co.,* 98 Va. 445, 36 S. E. 531, 49 L. R. A. 659; *Mutual Bldg. & Investment Co. v. Frederick,* 43 Ohio App. 270, 183 N. E. 114; *Rabbitt v. Wilcoxen,* 103 Ia. 35, 72 N. W. 306, 38 L. R. A. 183, 64 Am. St. Rep. 152." (pp. 947, 948.)

In 9 Am. Jur., Building and Loan Associations, § 25, it is said:

"There is a certain sense in which any member of a building and loan association who has made payments on his stock may be said to be a creditor of the association even before he has given notice of withdrawal. It has been stated in some cases that a member of a building and loan association ceases to be a stockholder and becomes a creditor of the association when he gives notice of withdrawal, or at least upon the expiration of such notice, provided the association is a solvent, going concern. According to the weight of authority, however, withdrawing members neither become general creditors nor lose all their rights and interests as members when notice of the intention to withdraw is given, or even when the time of notice has run, unless they have received the withdrawal value of their stock. While in a qualified sense withdrawing members may be considered creditors of the association, their rights as against those with whom they have been associated are very different from those of general creditors whose claims are based wholly on outside transactions." (p. 116.)

See, also, Sundheim, Building and Loan Associations, § 163; 12 C. J. S., Building & Loan Associations, § 36, p. 443, and *McCaskill v. Parsons Bldg. & L. Ass'n,* 141 Kan. 578, 42 P. 2d 572. The latter case is not cited as being conclusive, but as instructive.

In 12 C. J. S., Building and Loan Associations, § 27, it is said:

"In the absence of statute, a building and loan association has no lien on stock or dividends other than that given by the articles of association or bylaws." (p. 435.)

We are referred to no provision in our statutes or in the bylaws which creates a lien on the withdrawal value of the stock in question. While appellant does not claim its right to the credit on the theory it actually holds a lien on the withdrawal value of the stock, yet if its contention be sustained its security, or in effect its lien, will be augmented to the extent of the value of the stock. It does not appear our laws contemplated that result.

G. S. 1935, 17-1012, provides only that on foreclosure of a mortgage loan by the association the shareholder defaulting shall be given credit for the withdrawal value of the shares pledged and transferred by him as security for the loan. The instant shares were not pledged as security for the loan. G. S. 1935, 17-1016, contains only the following restriction, to wit:

"No shareholder shall be entitled to withdraw *whose shares are pledged as security for a loan* from the association without first paying the amount due the association."

Since the lawmakers expressly undertook to deal with the subject of the right of a shareholder to withdraw from the association and prohibited only those shareholders to withdraw whose shares were pledged as security, until they had paid the amount due the association, it would seem the lawmakers intended to permit the withdrawal value of stock which was not pledged as security.

Appellant directs our attention to such decisions as *Morrison v. Loan Ass'n*, 113 W. Va. 391, 128 S. E. 378; *Red Bank Building & Loan Ass'n v. Alling*, 20 F. Supp. 474. The facts are not sufficiently analogous to those in the instant case to disturb the conclusions we have reached. They involve in part the status resulting from banking relations and in each of them the additional element of the insolvency of the bank was involved. We think the court properly refused to permit appellant to apply the withdrawal value of the stock on the mortgage debt, not on the ground it was exempt as representing the proceeds of the life insurance policy, but because appellant had no lien on the withdrawal value of the fund or any other right to apply it on the mortgage debt. The judgment is affirmed.