WILLIAM M. WILCOXEN, RECEIVER, Appellant, v. T. L. SMITH *et al.,* C. B. HOWARD *et al.,* DANISH EVANGELICAL LUTHERN, OUR SAVIOR's CONGREGATION, LARS JOHNSON *et al.,* LARS P. LARSON *et al.,* JOHN HEMINGSON (six cases).

Building and Loan Association: INSOLVENCY. A provision in a mortgage to a building and loan association in effect that the full amount of payments to the loan fund with earnings to the last dividend period, shall, in the event of foreclosure, be credited on the amount due on the loan, contemplates the continuance of the business of the association and yields to the equities requiring the withdrawal value of the stock to be determined by its actual value where the association has become insolvent and discontinued business and a receiver has been appointed; since, on dissolution of the association, each member, whether a borrower or not, is entitled to an equal distribution of assets exceeding liabilities.

MEMBERSHIP. A member of a building and loan association does not cease to be such by pledging his shares to the association as security for a loan.

FORECLOSURE: *Evidence.* The burden is upon a receiver of a building and loan association in an action to foreclose a mortgage given by a borrowing member, to rebut the presumption that the withdrawal value of the shares, which the mortgage provides shall be applied as a credit in the event of a foreclosure, is the book value, by showing their actual value.

Usury: BUILDING AND LOAN ASSOCIATIONS. Premiums exacted by a building association will render the loan usurious where it is apparent that they are a mere device to avoid the law against

usury from the fact that the association had established a fixed rate for premium and that the premium was not a fixed sum to be paid in any event, but that only so much of it was to be paid as should have accrued at the time of the foreclosure.

RULE APPLIED. The by-laws of a building and loan association required loans to be granted according to priority of applications. Loans were made without bidding for priority, the borrowers being required to pay a fixed monthly premium, and the mortgage provided that, on foreclosure, the amount due should include accrued premiums to the date of the decree. *Held*, that such premiums were in the nature of interest, and not "premiums bid for preference in taking loans," permitted by Code 1873, section 1185, and that where they, in addition to the interest provided, exceeded the legal rate the loans were usurious.

APPLICATION OF USURIOUS INTEREST. Usurious interest and premiums paid by a borrowing member of a building and loan association should be applied in satisfaction of the loan.

*Appeal from Pottawattamie District Court.*—HON. W. I. SMITH, Judge.

MONDAY, FEBRUARY 6, 1899.

ACTIONS in equity to recover amounts alleged to be due, and to foreclose certain mortgages. Each cause was heard on its merits, and a decree rendered therein, from which the plaintiff appeals.—REVERSED.

*Wm. M. Wilcoxen* for appellant.

*S. B. Snyder* for appellees.

ROBINSON, C. J.—These cases are submitted together, for the reason that controlling questions are common to all of them. The case of Wilcoxen, receiver, against Smith involves the following facts: The Union Building & Saving Association was organized to transact business as a mutual building association, under and by virtue of sections 1184 to 1187, inclusive, of the Code of 1873. On the twenty-eighth day of December, 1894, it was insolvent to the extent that it was unable to pay to the share-holders the full amounts paid by them to the loan fund of the association, and William M.

Wilcoxen was appointed by the district court of Polk county receiver of the association, and he duly qualified and is acting as receiver. About the first of January, 1893, the defendant T. L. Smith subscribed for ten shares of Class A stock of the association, and thereby became a member thereof and shareholder. A few days later he and his wife and co-defendant applied to the association for a loan of one thousand dollars, and signed a written obligation, of which the following is a copy: "January 2, 1893. As the holder of ten shares of stock in the Union Building and Saving Association of Des Moines, Iowa, and in consideration of the sum of one thousand dollars advanced to T. L. Smith and wife, Elizabeth R. Smith, by said association, the receipt whereof is hereby acknowledged, we promise, contract, and agree to pay to said association, its successors or assigns, as follows, to-wit: The sum of eighteen and 80-100 dollars on the first day of February, 1893, and a like sum of eighteen and 80-100 dollars on the first day of each and every month thereafter,—the same being the sum of five and 80-100 dollars as monthly installments; the sum of five dollars for one month's interest at six per cent. per annum, on said loan; the sum of eight dollars monthly as and for premiums bid for said loan. Also all fines and penalties which we may incur as the holder of said ten shares of stock. In accordance with the by-laws of said association, all said payments are to be made on the first day of each and every month, and shall continue to be made until such time as the monthly installments paid in on said ten shares of stock, together with the profits thereon, shall equal their aggregate par value of one thousand dollars. We further agree that if default shall be made in the payment of said sums of money, or any of them, for the period of three months, after the same are due and payable, the whole of said principal sum, advanced as above, shall at once become due, and, if suit be commenced to enforce the collection of the amount due on this contract, a reasonable sum shall be allowed as plaintiff's attorney fee and taxed with the costs in the case. (Signed) T. L. Smith. Elizabeth R. Smith." To secure the payment

of the loan, Smith and his wife executed to the association a mortgage on certain lots in an addition to the city of Council Bluffs, and Smith assigned to the association his certificate for ten shares of stock, to be held as further security for the loan. The plaintiff claims that the defendants are more than three months in arrears in the payment of dues, interest, and premiums, and that, by the terms of the loan, the entire amount thereof is due. The Smiths allege that they are entitled to credit as follows: One hundred and eighty-four dollars for premiums paid at the rate of eight dollars per month, ten dollars paid as certificate fees, one hundred and fifteen dollars paid as interest, and two hundred and two dollars and thirty cents paid as dues on stock, and to earnings. They further allege that the loan was usurious, and that the premiums paid were not in fact fixed on competitive bids by the members of the association, but were fixed by it for the use of the money loaned. It is admitted that Smith had made all payments due from him prior to the appointment of the receiver, and that he has not paid anything since that time. He paid as premiums one hundred and eighty-four dollars, and as interest, at the rate of six per cent. per annum, one hundred and thirty-eight dollars. It is also admitted that the association is insolvent, and that when the receiver was appointed the book value of the shares of stock held by the association was two hundred and fourteen dollars and ninety-one cents, including profits to the amount of thirty-five dollars and seven cents, which had been apportioned to the stock. The district court found that the loan was usurious and illegal; that the defendants were entitled to credits thereon for the interest and premiums paid and the book value of the stock to the aggregate amount of five hundred and thirty-six dollars and ninety-one cents; and rendered a decree against Smith for the balance of four hundred and sixty-three dollars and nine cents and for one hundred and seventy-six dollars and forty-eight cents for the use of the school fund, and also decreed the foreclosure of the mortgage. The other cases involve similar facts.

I. We first inquire whether the loans were usurious. The by-laws of the association provided that its funds should be loaned on real estate security, only to its members, "upon such conditions as the board of directors may dic- tate;" that the rate of interest should be six per cent. per annum on the money actually loaned; that all interest and premiums should be paid monthly; and that all applications for loans would "be granted according to the pri- ority of the application," in case the security should be approved by the board of directors or executive committee. Although the by-laws contemplated the payment of premi- ums, they did not, in terms, require premiums, nor prescribe any rule for ascertaining what premiums should be paid. The evidence does not show that the board of directors ever adopted any formal rule in regard to them. But it appears that the amount of premium specified in the applications of the borrowers as that which they offered to pay for the desired loan was uniformly eighty cents for each one hundred dollars of the loan. There was no formal bidding for the loans. When a borrower asked for the terms on which he could pro- cure a loan, he was informed, in effect, that a premium of eighty cents on each one hundred dollars of the loan would be required each month. That amount was as definitely fixed and as regularly exacted as was the payment of interest, and both premium and interest were placed in the loan fund of the association. Section 1185 of the Code of 1873, which applies to the transactions in question, provides that a mutual building association "shall be authorized and empowered to levy, assess, and collect from its members such sums of money, by rates of stated dues, fines, interest on loans advanced, and premiums bid by members for the right of precedence in taking loans, as the corporation by its by-laws shall adopt," and that "the dues, fines, and premiums so paid by members, in addition to the legal rate of interest on loans taken by them, shall not be construed to make the loans so taken usurious." That section contemplated good-faith bidding of

premiums to obtain the right of precedence. The statute does not require the payment of the premium in advance, and the fact that it is to be paid monthly, until the maturity of the loan, would not necessarily impress it with the character of interest paid. Whether an association can fix, in advance of application, the premium which shall be paid, we do not determine, although some authorities seem to hold that the power to do so exists. But it is clear that the premiums must be fixed and paid in good faith, to secure the loan, and not as a mere device to evade the law against usury. 4 Am. & Eng. Enc. Law (2d ed.), 1071. The premiums paid in these cases differ from the interest only in name and amount. The mortgages were given to secure the payments of the premiums as well as other sums, and provided that, in the event of foreclosure, the amount due should include all monthly installments, interest, premiums, fines, and penalties due at the date of the decree of foreclosure, less the withdrawal value of the shares of stock held as collateral security. It thus appears that the premium was not a fixed sum, to be paid in any event, but that only so much of it was to be paid as should have accrued at the time of foreclosure. We are satisfied that the sums nominally paid as premiums were for the use of the money loaned, and as truly interest as were the payments made as interest, and that the designation of some of the payments as premiums was a mere device to evade the law against usury. As the monthly payments of premiums and interest together exceeded the highest rate of interest allowed by law, the loan was usurious. The cases of *Association v. Blackburn,* 48 Iowa, 385, and *Association v. Heider,* 55 Iowa, 424, are not precisely in point, but may be read with profit.

II. The district court rightly refused to allow the plaintiff anything for the interest and premiums paid, and deducted their aggregate amounts from the sums loaned as credits in favor of the defendants. The district court also allowed as a credit in each case the book value of the stock pledged as collateral security, and of that the appellant also complains. As already mentioned, the

mortgage provided that the withdrawal value of that stock should, in the event of foreclosure, be credited on the amount due on the loan. The by-laws of the association provide that any shareholder in good standing, who has paid three months' dues, may, after due notice, and upon the surrender of his certificate, withdraw the full amount of his payments to the loan fund, together with the earnings up to the last dividend period. We understand that the book value of the certificates of stock allowed by the district court in each case was the amount of installments paid on the stock and the earnings thereof to the last dividend period preceding the appointment of a receiver. But the book value was not the actual value, for the reason that the association was insolvent and unable to pay to each shareholder the book value of his shares. We are therefore required to determine whether the stipulation in the mortgage to which we have referred controls. If it does, then it is manifest that the shareholders who are borrowers, and whose mortgages are foreclosed, will receive more for their stock than will the shareholders who are not borrowers. But the association is composed of members whose rights are mutual, and among whom there should be equality, based upon their payments to the capital stock of the association; therefore, if the borrowing member is allowed for all the payments he has made and the earnings thereof, the losses of the association will fall upon the members who have not borrowed, there will not be an equality between the two classes of members, and great injustice will be done. A court of equity should seek to avoid that result. It was said in *Rabbitt v. Wilcoxen,* 103 Iowa, 35, a case which involved an interpretation of the by-laws of the association now under consideration, that it was quite evident that the by-laws "were adopted with reference to doing business, rather than with reference to closing up" the affairs of the association, and that the provision for paying back contributions to the loan fund contemplated monthly receipts for the fund, and that there was nothing to show a purpose to make such payments after

the receipts had ceased, and the only business of the corporation is a final settlement and an equitable division of the assets. What was thus said is applicable in this case. The withdrawal value of the shares of stock, as fixed by the by-laws while the association was a going concern, was the full amount of the shareholder's payments to the loan fund, together with the earnings; but the by-laws did not require the payment of that amount when the association had become insolvent, had ceased to do business, and when its affairs were in the process of final liquidation. In such a case, an equitable distribution of the assets, if any, in excess of the liabilities, should be effected; and that requires that the fair value of the shares be ascertained, and that the value thus ascertained, of the shares of the borrowing members, be deducted from the loan to him for which a foreclosure is sought. It is proper to observe, in this connection, that the articles of incorporation and by-laws of the association provide for loans to shareholders upon the security of their shares of stock, and that by pledging their shares for loans the shareholders did not cease to be members of the association. See Endlich Building Associations ( 2d ed.), sections 121-123, 475, 514; Thompson Building Associations, p. 129, section 15.

Our conclusion that the appellees are only entitled to credits for the actual value of their shares of stock has support in the authorities. See *Knutson v. Association,* 67 Minn. 201 (69 N. W. Rep. 889) ; *Eversmann v. Schmitt,* 53 Ohio, 174 (41 N. E. Rep. 139) ; *Price v. Kendall,* 14 Tex. Civ. App. 26 (36 S. W. Rep. 810) ; *Strohen v. Association,* 115 Pa. St. 273 (8 Atl. Rep. 843) ; *Christian's Appeal,* 102 Pa. St. 184; *People v. Lowe,* 117 N. Y. 175 (22 N. E. Rep. 1016) ; *Rogers v. Hargo,* 92 Tenn. Sup. 35 (20 S. W. Rep. 430) ; *Rogers v. Raines* (Ky.), 38 S. W. Rep. 483; Thompson Building Associations, p. 60, section 2; Thompson Building Associations, pp. 127, 129, sections 11, 12, 15 ; Endlich Building Association (2d ed.), sections 45, 77, 514, 531.

It follows from what we have said that the district court erred in crediting the defendants with the book value of their shares. The appellant contends that no credit for the shares should be allowed in these actions, because the affairs of the association are not yet settled, and, until that is done, the credits to be allowed for the shares cannot be ascertained. It is true that no credit for the shares should be allowed until their value is ascertained, and it appears that when these actions were heard in the district court the settlement of the affairs of the association had not progressed so far that the value of the shares could have been known. If such value can be determined in these actions, we know of no objection to the allowance of proper credits therefor; but in view of the conditions under which this case is submitted, and the conclusion reached, we do not determine whether there can be a recovery of the amount of the loans and a foreclosure of the mortgages before the credits which should be allowed for the stock can be ascertained. In the absence of proof, it would be presumed that the credits should be the book of values of the shares, and the burden would be upon the plaintiff to rebut the presumption, and show the actual value of the shares.

III.   In the case against C. B. Howard, his co-defendant, Margaret Howard, claimed a credit on the plaintiff's cause of action for the value of 12 shares of stock of the association which she held. The appellant insists that she was not entitled to the allowance claimed. Since no allowance was made for the credit claimed, and the appellees do not appeal, it is not necessary to consider the matter further.

IV.   It is claimed in the case against the congregation that the proof fails to show that its trustees had authority to subscribe for stock and enter into the contract and mortgage in suit. The evidence on their part is not wholly satisfactory, but it is sufficient to sustain the action of the trustees. In reaching the conclusion expressed, we have not treated chapter 48 of the Acts of the Twenty-seventh General Assem-

bly nor section 1898 of the Code as applicable to these cases, and are not to be understood as determining whether they do or do not so apply. Nothing is claimed for them, and, in determining the questions presented to us, we have assumed, without deciding, that section 1185 of the Code of 1873 is applicable.

The views we have expressed dispose of all questions involved in the several cases presented in argument. For the reasons shown, the decree in each case is reversed; and, since proof of the actual value of the shares when the receiver was appointed was not and could not have been made at the time of the hearing, equitable considerations demand that the causes be remanded to the district court for further proceedings in harmony with this opinion, to ascertain and make due allowance for the credits, if any, for shares of stock to which the appellees are entitled, or, if that cannot be done in these actions, to protect the right of the appellees to recover such credits by appropriate proceedings.—REVERSED.