The Thirteenth Ward Building and Loan Association of Newark, New Jersey, complainant-respondent.

*v.*

Isadore Weissberg et al., defendants-appellants.

[Argued October 18th, 1933.   Decided February 2d, 1934.]

*Mr. Michael G. Alenick,* for the appellants Isadore Weissberg and Hannah Weissberg.

*Mr. Sidney Finkel (Mr. August W. Rosinger,* of counsel), for the complainant-respondent.

*Mr. Edward Fenias (Mr. Joseph Kraemer* and *Mr. Israel B. Greene,* of counsel), for the defendant-respondent Falcon Building and Loan Association.

*Mr. Simon L. Fisch,* for the defendant-respondent Fidelity Union Trust Company, executor of Samuel Herman, deceased.

Briefs were filed by John Warren, Louis J. Cohen and Samuel Kaufman, as *amici curiæ.*

The opinion of the court was delivered by

HEHER, J.

Complainant, a building and loan association incorporated under the laws of this state, seek the foreclosure of a mortgage made by appellants, covering lands of the latter situate in the city of Newark. The bill was filed on August 2d, 1932, and alleged that interest and monthly installment payments, required by the bond and mortgage, had been in arrears for a space of three months, and that complainant had elected to declare the entire sum secured by said bond and mortgage due and payable immediately, and that the shares of complainant association pledged as collateral security should be forfeited to and become the property of complainant. The Falcon Building and Loan Association was made a party defendant because it is the holder of a second mortgage encumbrance. Appellants, by counter-claim exhibited against the Falcon association, and the Fidelity Union Trust Company, as executor of and trustee under the last will and testament of Samuel Herman, deceased, alleged that a duty rested upon the Falcon association to pay and satisfy, from the proceeds of its mortgage loan to appellants, the sum due on

complainant's mortgage; that it entrusted the performance of this duty to its solicitor and agent, Samuel Herman, who defaulted, and that, in consequence thereof, complainant's mortgage was not satisfied. The relief sought from the Falcon association was the satisfaction of complainant's mortgage, predicated upon the Falcon association's asserted liability to appellants for the injurious consequences of the fraud practiced by Herman, and reimbursement from the Falcon association and Herman's estate for the loss occasioned to appellants in the premises. The decree directed a sale of the mortgaged premises to satisfy the sums due to complainant and the Falcon association upon their respective mortgages, and dismissed the counter-claim.

The only question raised respecting complainant's mortgage relates to the amount due thereon. The decree adjudged the amount due to be $5,209.60. Appellants subscribed for eighty shares of the complainant association, and pledged them as collateral security for the payment of the bond to secure which the mortgage was given. The controversy involves the profits apportioned to these shares. Appellants insist that the amount due on the mortgage, on November 25th, 1932 (the date of the final hearing), was $3,602.40, and they rely upon the apportionment of profits to the issued shares made at the annual meeting of the shareholders held in April, 1932, and a statement, based thereon, furnished on November 7th, 1932, by complainant's secretary to appellants' counsel, certifying the mortgage indebtedness to be the sum above mentioned. Therein the mortgage debt was credited with profits on the eighty shares held by appellants at the rate of $44.17 per share, amounting to $3,533.60. However, on June 17th, 1932, the board of directors of the complainant association adopted a resolution providing that, "on and after June 18th all members wishing to withdraw their shares from the association would only receive fifty per cent. of the withdrawal profits as listed on the annual report to take care of anticipated losses." And the secretary explained that the statement of November 7th, 1932, showed the profits apportioned at the annual meeting, but did not,

through his oversight, give effect to the resolution of June 7th, 1932.

Appellants state the question at issue to be whether a shareholder, in such circumstances, acquires a vested right to profits declared by the association prior to the institution of a foreclosure suit, so as to preclude it from "recapturing profits."

Appellants did not acquire a vested right to the profits apportioned to their shares at the annual meeting of the shareholders. Section 49 of the act relating to building and loan associations (*P. L. 1925 pp. 189, 211*), as amended by chapter 92 of the laws of 1932 (*P. L. 1932 p. 161*), authorizes the withdrawal of shares, and provides for the payment of the withdrawal value, to be determined in the manner therein directed. It ordains that:

"The shares of every such association * * * may be withdrawn by the holder; * * * and the withdrawal value of the shares withdrawn shall be not less than the sum of the subscription or dues paid on such shares, *less a proportionate share of any loss sustained by such association; and after the first year a reasonable share of the profits, less unpaid fines, shall be included in the withdrawal value;* and in case such shares are pledged as collateral security for the repayment of a loan made thereon by such association, the amount of such loan shall be deducted from such withdrawal value, and the difference only paid to such member * * *."

Section 55 of the act (*P. L. 1925 p. 213*) provides that if a member of such association shall fail for six successive months to pay his installments in accordance with the provisions of the constitution, his membership in the association shall, at the option of the board of directors, cease and determine, and that "if he be a borrower on bond and mortgage, the principal sum of such mortgage shall, at the option of the board of directors, become at once due and payable, unless by the terms of the mortgage the same shall sooner become due and payable, in which event he shall be allowed the *withdrawal value* of his pledged shares, as a credit on such mortgage loan, less any arrearages or charges in connection therewith," and that "if he be not such a borrower he shall be paid the withdrawal value of his shares, less

the amount of any loan thereon as collateral security that may be made by such association."

The "withdrawal value" of building and loan stock is a price at which the association will redeem its stock before maturity, and includes the amount paid, plus a part, but not all, of the net profits, the amount of which is fixed by the board of directors by virtue of authority conferred by the by-laws and the statutes of the jurisdiction of its incorporation. The ascertainment of the real value of the stock can be arrived at only by closing up the affairs of the corporation, and this no member has a right to ask. *Sundheim on Building and Loan Associations (3d ed.) § 54.* The directors have a right to consider possible future losses on present investments. *In re Oxford Benefit Building and Investment Society, 35 Ch. D. 502; 56 L. J. Ch. 98; 55 L. T. 598; 35 W. R. 116.* Dividends on installment stock are never declared, but earnings are allowed to accumulate until maturity, and reports showing profits before that time are paper profits only and cannot be claimed. *Sundheim on Building and Loan Associations (3d ed.) § 56.* The liability imposed upon members of such associations to contribute to losses necessarily extends to the member who has become a borrower. *Endlich on Building Associations, 64.*

The right of withdrawal does not exist, except as conferred by a by-law or statute, and when so conferred the right will be restricted to the terms of the by-laws or statute. *Fitzgerald v. State Mutual Building and Loan Association, 76 N. J. Eq. 137, 141.* And a defaulting member has no right to the inclusion of a portion of the profits in the ascertainment of the withdrawal value of his shares, unless it is conferred by statute or by-law. *Watkins v. The Workingmen's Building and Loan, 97 Pa. 514; Endlich on Building Associations, 459, 460, 461.* A borrower's claim to have all items, including profits, which go to swell the general fund of the association, taken into account, and to be given credit therefor, "at any intermediate stage, has no foundation in law or equity." He is, in the first place, a member, and only in the second place, a borrower. In the former capacity he

has no right to an account of profits except upon termination of the scheme, unless such right is expressly conferred by statute or the contract. *Mechanics Building and Loan Association of New Brunswick* v. *Conover, 14 N. J. Eq. 219; reversed* (but not as to this point), *17 N. J. Eq. 497; Endlich on Building Associations, 461.*

The right to withdraw, without the forfeiture of the money paid in, is in its essence a privilege. In becoming a member of the association, the shareholder does so, ostensibly, at least, with the purpose of remaining in it to the end, bearing his part of all its burdens, and finally sharing all its profits in the same proportion. His failure to continue in the concern, therefore, is essentially in the nature of a breach of contract, upon which the loss of his previous contribution might, not unreasonably, be held to follow. But circumstances, unforseen at the time of his assumption of membership, may, without any wrong on his part, make a severance of his connection with the association desirable, if not imperative. *Endlich on Building Associations, 82, 83.*

And, therefore, the statute confers the right of withdrawal, but only upon the terms therein prescribed. It recognizes and gives effect to the well-established principle that the withdrawing shareholder is not entitled to all the profits apportioned to his shares, but only to a reasonable part thereof. We find no warrant therein for appellants' claim to the profits apportioned to their shares at the annual meeting of the shareholders. There is evident a legislative purpose to give to a defaulting member who is a borrower on bond and mortgage the status of a withdrawing member, in respect of credit for the withdrawal value of his pledged shares. Section 55 of the act of 1925 provides that such member "shall be allowed the withdrawal value of his pledged shares as a credit on such mortgage loan less any arrearages or charges in connection therewith." Section 49, as amended, provides that after the first year "a reasonable share of profits, less unpaid fines, shall be included in the withdrawal value." It should be observed that the statute does not direct the inclusion of a *proportionate* share of *all* profits, but a *reasonable* share

of the profits only. And this is significant in view of the employment of the word "proportionate" in the preceding clause relating to "losses sustained."

The right of withdrawal springs from the statute, and not from contract. The shareholders could not, of course, by constitution or other agreement, override the statute. *Campbell, Receiver,* v. *Perth Amboy Loan, &c., Association, 67 N. J. Law 71.* There is not, in the instant case, any basis for the contention that the statute impairs the obligation of appellants' contract, nor is such claim made.

The "withdrawal value" should not be confused with the "book value." The "withdrawal value" is the amount actually paid, in addition to such *proportion of the profits,* or such rate of interest, as may be prescribed by statute or the by-laws. The "book value" is the proportionate amount of the net assets, including profits or losses, of the association, applied to a share of its stock, taking into consideration the amount actually paid in, and the length of time the association has had the use of the money. A member is entitled to "book value" only upon the maturity of his stock. *Sundheim on Building and Loan Associations, § 164.*

There is likewise a clearly manifested legislative purpose to vest in the board of directors a liberal discretion in determining the portion of profits to be included in ascertaining the withdrawal value. It is a discretion that must be reasonably, and not arbitrarily, exercised, to promote the financial integrity of the association. The act of 1925, by section 7, provides that the business and affairs of every such association shall be managed and directed by a board of directors, and it clearly contemplates that the board shall determine the withdrawal value of the shares, subject to the limitations imposed by statute, and the provisions of its by-laws not inconsistent therewith, and that in such action, as in all others of a discretionary character, it shall be guided by the general purpose to effect and maintain the economic security of the association. The proper exercise of the power to determine what is a reasonable share of the profits to be apportioned to the withdrawn shares, in settling their withdrawal value,

is vitally essential, if the fundamental requirement of equal participation at all times is to be observed, and the economic safety and stability of the association maintained. This is an authority that, naturally and logically, should reside in the body that is charged with the responsibility of the management and direction of the association's affairs and business, and neither the statute nor the constitution places it elsewhere.

Such discretion is consequently to be exercised in the light of existing conditions, and regard must of necessity be had to the absorption of future losses reasonably to be anticipated. Such discretion shall not, of course, be exercised capriciously, unreasonably or oppressively. The shareholder is entitled, at the maturity of his shares, to receive the full amount of the profits apportioned thereto, but before maturity he can claim, in addition to the dues paid in, only a reasonable share of the profits earned thereon. The purpose in retaining a portion of the profits, upon withdrawal of the shares, is obviously to meet subsequent losses. Concededly, the profits apportioned to the outstanding shares were subject to reduction by losses sustained before the shares matured. It would be manifestly unjust to permit appellants to receive payment in full of the profits apportioned to their shares, and place the entire burden of future losses upon the shareholders who remained. The statute, in the provision referred to, was undoubtedly designed to guard against this obvious injustice.

There is no basis for the conclusion that the board of directors, in the action complained of, abused the discretion vested in it by the statute. We are not prepared to say that, under normal conditions, the share of the profits thus allowed could be justly criticised as unreasonable, but there can be no doubt that, under present economic conditions, prudent management dictated that course. The learned vice-chancellor, therefore, correctly disposed of this question. Mr. Warren, in an excellent presentation of the general subject from the standpoint of investors in such associations, raises questions not at issue here, and we are therefore not called upon to decide them.

The counter-claim was properly dismissed. There is persuasive evidence that Isadore Weissberg participated in the fraud concededly practiced by Herman, and we are of the opinion that the conclusion of the vice-chancellor on this phase of the case should not be disturbed. On an appeal from a decree in chancery great weight is given to a finding upon a question of fact, for the obvious reason that the vice-chancellor, who sees the witnesses and hears them testify, is in a more advantageous position to judge their credibility than the reviewing court. *Cartan* v. *Phelps, 91 N. J. Eq. 312; Guardian Life Insurance Co.* v. *Mareczko, 114 N. J. Eq. 369.* In that situation, appellants are admittedly precluded from the right to the relief sought by the counter-claim. We have examined the rulings on evidence of which the appellants complain, and find that none requires a reversal of the decree. Assuming fraudulent conduct which disentitles appellants to the relief prayed (the evidence sought to be elicited by the overruled questions did not relate to this issue), the rulings complained of, if technically objectionable, did not in anywise prejudice appellants.

Decree affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 13.

*For reversal*—None.