## ROSCH v. FIRST SAVINGS & LOAN ASS'N et al.

No. 4505.

Court of Civil Appeals of Texas.
Eighth District.

May 1, 1947.

Ernest Guinn, County Atty., of El Paso, for appellant.

H. L. McCune, Louis A. Scott, H. L. Mc-Cune, Jr., Burges, Scott, Rasberry & Hulse and Andress, Lipscomb & Peticolas, all of El Paso (Dan Moody, of Austin, on the brief), for appellees.

SUTTON, Justice.

This is an appeal from the judgment of the 41st District Court of El Paso County.

The proceeding is under the Declaratory Judgment Act. Vernon's Ann.Civ.St. Art. 2524—1. The Tax Assessor and Collector and the County Attorney of El Paso County brought the suit against the First Savings and Loan Association, Mutual Federal Savings and Loan Association, the El Paso Federal Savings and Loan Association, and certain other named individuals as officers of the Associations and as individuals, and pro forma against the Commissioners Court of El Paso County and the several members of such Court, wherein it is sought to have the Court determine and declare what property in possession of the defendant Associations is subject to assessment for taxation, and to whom it should be assessed under the applicable provisions of the Constitution and statutes, more particularly subsection 53 of Art. 881a, Vernon's Civil Statutes. The trial was to the Court and from the judgment of the Court the plaintiff Rosch has brought this appeal. The Associations and certain other defendants have cross assigned.

In the trial court each of the defendant Associations specifically excepted to plaintiff's pleading for the reason that neither Herman Rosch as County Tax Assessor and Collector or Ernest Guinn as County Attorney had the right or authority to bring or maintain the suit for declaratory judgment, and the suit should have been brought in the name of the State of Texas and the County of El Paso. Plaintiff questioned the constitutionality of Article 881a—53, Vernon's Ann.Civ.St. and in conformity with Section 11 of the Uniform Declaratory Judgments Act (Art. 2524—1 § 11, V.A.C.S.) served the Attorney General with a copy of the proceedings. The Attorney General did not intervene in be-half of the State. The County of El Paso was not made a party to the suit by the petition, and although M. Scarborough as County Judge filed an answer in behalf of El Paso County, we think it apparent from the record that he had no authority to file an intervention in behalf of the County. Appellees have not raised the point on this appeal. However, we have considered it, since we regard it as jurisdictional. Ernest Guinn has not appealed. The appeal bond is signed by Herman Rosch individually and not as County Tax Assessor and Collector. We attach no importance to this defect, since it is an irregularity which could easily have been corrected had any point been made regarding it. We have requested the parties to brief the point, but to date appellees have not done so. Appellant has filed a brief on the point and we have made an independent investigation. We quote from Anderson on Declaratory Judgments, Section 363, p. 831: "It may be laid down as a general rule that a declaratory action is an appropriate remedy to ascertain and determine the powers, duties, liabilities and legal relations of public officers and municipalities."

And from Borchard, Declaratory Judgments, pp. 567, 568: "Public authorities frequently take the initiative in raising the question as to * * * their power to levy taxes under certain circumstances and administer the tax power."

In Secretary of State v. Potter, 252 Mich. 460, 233 N.W. 380, the Supreme Court of Michigan, without discussing the question, recognized the right of the Secretary of State who was charged with the duty of collecting a tax on wort and malt syrup, or malt extract, to maintain a suit under the Michigan Declaratory Judgments Statute for a declaration of his duties involving the construction of a statute; and in San Luis Power & Water Co. v. Trujillo, County Treasurer, 93 Colo. 385, 26 P.2d 537, 540, the Supreme Court of Colorado under a declaratory judgment statute similar in all respects to ours, recognized the right of the County Treasurer, who was the official charged with the duty of assessing a tax against an irrigation system where the Tax Assessor refused to do so, to main-

tain a suit for a declaration involving the question of exemption under certain statutes and the Colorado Constitution. In the course of the opinion the court said: "The official duties of the treasurer of Costilla County, Colorado—as they relate to his office—to the state of Colorado and to the property and interests of the water company are affected by the construction of certain statutes, and it appears as a vital necessity that, in order to safeguard the interests of the people of this particular political subdivision, and the interests of the water company, as well as direct the official course of the treasurer, a judicial construction of such status be had. The facts are sufficiently ripe for judicial decision."

In Nashville, Chattanooga & St. Louis Railway Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 347, 77 L.Ed. 730, 87 A.L.R. 1191, the Supreme Court of the United States held that a "case or controversy" within the judicial power of the court under the Constitution was presented in a suit by the taxpayer for a declaratory judgment under the Tennessee Declaratory Judgment Act. Said the Court: "That the issues thus raised and judicially determined would constitute a case or controversy if raised and decided in a suit brought by the taxpayer to enjoin the collection of the tax cannot be questioned. * * * Thus the narrow question presented for determination is whether the controversy before us, which would be justiciable in this Court if presented in a suit for injunction, is any the less so because through a modified procedure appellant has been permitted to present it in the state courts, without praying for an injunction or alleging that irreparable injury will result from the collection of the tax."

A real controversy exists between Rosch as Tax Assessor and Collector and the appellee associations as to the construction of Art. 881a—53, Vernon's Ann.Civ.St. A declaration will definitely settle Rosch's duties as Tax Assessor and Collector under this statute. In view of the purpose of our Uniform Declaratory Judgments Act and the mandate that it be liberally construed and administered, as expressed in Section 12 (Art. 2524—1, Vernon's Ann.Civ.St.,

Sec. 12) and the above-cited authorities, it is our conclusion that the suit was properly brought and maintained by Rosch as County Tax Assessor and Collector.

The primary and controlling question involves the construction and application of Section 53 of Art. 881a, supra. The other questions are incidental or corollary thereto.

The associations acting under their construction of the statute rendered for taxation office furniture and fixtures and real estate, where owned, under (a) and (b) of Section 53 and by deductions of the "Book Value" as by them construed of outstanding shares eliminated all other property in the possession of the associations, under (c). The Assessor and Collector supplemented his assessments and placed on the unrendered roll all other property in possession of the associations as reflected by their financial statements either as the property of the associations, or as the agent of the unknown share holders. As against certain known shareholders he supplemented their assessments by adding thereto the shares held by them. On a hearing had before the Commissioners Court sitting as a board of Equalization that Court or Board concluded the supplemental assessments were illegal and ordered them struck from the rolls. The trial court concurred in that conclusion, of which the plaintiffs complain.

The difficulty probably arises on the confusing of the term "Book Value" as applied to the charter shares of the capital stock of the ordinary private, commercial corporation with the term as used in the tax statute hereunder consideration. The charter shares are wholly different from the shares or share accounts of a building and loan association. In the case of the former one buys so much personal property and the ownership of that property continues in some one for the life of the institution. In the case of the Associations one deposits a sum of money which entitles him to participate to the extent of a determined amount in the earnings of the concern so long as he leaves his money on deposit and remains a member. He may upon the conditions prescribed under the statute withdraw his deposit. The owner of shares of corporate stock cannot do that. He is priv-

ileged only to sell, if he finds a purchaser, and cannot secure a refund, or withdrawal of his invested funds. There are other differences but these are sufficient to suggest the distinguishing characteristics of the two things. The Association member buys nothing but deposits his money.

We think the Legislature had in mind a different meaning in the use of the term "book value". There is no question made here but that there is property of considerable value that is subject to taxation but the question presented is to whom should it be assessed? We think it clear enough it was the intention of the Legislature that the share owner should be liable for the taxes on the amount of money he has with the Association on January the first of the taxable year as reflected by the condition of his account on the books of the association. This amount of money credited to the share owner's account represents his "share". It is his and he has the responsibility of rendering it for taxes and the liability for the taxes thereon is with him. The statute, Art. 856, Vernon's Statutes, declares such shares to be personal property. It could not well be otherwise declared, because it is a mere sum of money on deposit with the Association.

There is other property of considerable value in the possession of the Associations, and we think admitted subject to taxation, in part at least. It could hardly be the Legislature intended to make the share owner responsible for the taxes on that property. He has no present ownership or interest in it and his prospective or contingent interest is so very remote as to be virtually worthless. It could hardly be expected to influence the value of his so-called share. His present ownership and interest is limited to the sum of money credited to his share account on the books. We think the Legislature regarded this other taxable property in possession of the Association as belonging to the Association as such. The share owner could have little hope of being on hand when dissolution and liquidation comes—the only time he could come into ownership and possession of any part of it, unless applied and credited to his account. That the ownership is so regarded is made rather manifest by the provision of subsection (c) of Section 53, supra, wherein it provides the Association shall render as its property the "excess of an amount representing the total of (1) accounts payable and notes payable and owing by such association; (2) the book value of the shares outstanding and (3) the assessed value of the furniture and fixtures and real estate held by such association and rendered by it for taxation." If "book value" as used here is construed to mean the value of the assets as extended on the books of the association less the liabilities and such other matters as may be required to be deducted, then there can never be any "excess of an amount representing" the items enumerated above, because the "book value" uses it all up, and the provision of the law in that respect is an idle and useless thing and stands as if the law provided only that it should render for and be liable for the taxes only on its office fixtures and furniture and the real estate owned by it. All else as provided by the Legislature in that section is thus held to be idle folly. We may not so hold, nor do we. It must have intended something and that can be nothing less than, nor more than, that book value as therein used means the sum of money credited to the share holder's account on the books of the Association on January the first of the year for which the tax is imposed. Such has been the meaning attributed to book value wherever used in the authorities we have been able to find when applied to building and loan associations. That is the construction of the court in the case of Thirteenth Ward Building & Loan Association of Newark v. Weissberg, 115 N.J.Eq. 487, 170 A. 662, 665, 98 A.L.R. 134, at page 141, 15 book value of stock, notwithstanding a contrary construction thereof by some eminent counsel. A study of the text of that opinion will make it clear as to the meaning. It is there thus defined: "The 'book value' is the proportionate amount of the net assets, including profits or losses, of the association, *applied to a share of its stock,* taking into consideration the amount actually paid in, and the length of time the association has had the use of the money. A member is entitled

to 'Book value' only upon the maturity of his stock. Sundheim on Building and Loan Associations, § 164." (Emphasis ours.)

The last sentence makes it apparent, we think, wherein it is said, "A member is entitled to 'book value' only upon maturity of his stock." The inference may be reasonably indulged that the stock under consideration there was installment stock. In McPherson v. Railway Savings & Building Association, 93 Colo. 155, 25 P.2d 388, the book value there contended for was the amount of money credited to the shares on the books, and it was held they were not entitled to that value until the stock had matured, that is, the amount credited to the account equalled the par value of the stock. In the Thirteenth Ward case, supra, it is observed the share holder is entitled, at the maturity of his shares, to receive the full amount of the profits apportioned thereto (in other words, the book value as previously observed in the opinion), but before maturity only a reasonable share of those earned thereon. The language in parenthesis is ours. Again such was the meaning given the terms in Wilcoxen v. Smith, 107 Iowa 555, 78 N.W. 217 at bottom of page 218, last column, 70 Am.St.Rep. 220. It is observed there as it has been in other authorities that book value differs from actual value. Again in Enterprise Bldg. & Loan Soc. v. Bolin, 12 Colo.App. 304, 55 P. 740, bottom of last column, book value is described as the amount credited to the account, but under the applicable statute not the withdrawal value. The list of cases in which the term is thus applied might be continued to some length, and none to the contrary are found, when applied to building and loan associations.

■ That the construction here is reasonable and logical, as well as common and generally accepted might be illustrated in other ways. We make one. It has many times been said, as is said in the McPherson case, supra, that the whole scheme of building and loan associations rests on a basis of strict mutuality, equality and fairness, 12 C.J.S., Building and Loan Associations, § 3, p. 396, and § 25, p. 433, and the cases cited. In the case of a serial share holder, his share is matured when the sums accredited to his account equal the par val-

ue, and his rights are fixed and he is relieved of further liability for losses and is not permitted to share in future profits nor the common fund in the hands or possession of the association, 12 C.J.S., Building and Loan Associations, § 25, p. 433. In other words, his share is worth the sum credited to his account on the books—book value.

Notwithstanding, the probable accuracy under the record in the instant case of the trial court's conclusion that the withdrawal value is the book value, we think it may not be in all instances. It is thought there are circumstances in which the book value as construed herein may differ from the withdrawal value, but to avoid dictum right now we forego naming one, except to call attention to the provisions of Section 47 of Art. 881a which provides for the reduction of the withdrawal value below the sum credited to the share.

■ It follows as a matter of course, we do not regard any pro rata portion of the reserves as a part of the book value as we understand and construe it. Certainly had the Legislature intended to constitute the reserves a proper deduction it would not have been difficult to so provide as has been in some instances, e. g. Art. 5057a, Vernon's Statutes.

We recognize we may have extended this discussion of book value unnecessarily but have done so because of the divergence of very respectable professional opinion, including that of the late Attorney General, the Hon. Gerald C. Mann, wherein the Department held to a contrary view and a different construction of the Thirteenth Ward case, supra, in Opinion No. O–3526, approved June 7, 1941, and the earnestness with which it has been presented.

■■ We are called upon to determine what other property is deductible under the statute in arriving at the value of the assets for the purpose of taxation. The plaintiffs complain the U. S. bonds, savings stamps and stock held by the Federal Associations in the Federal Home Loan Bank are not deductible. In this we do not concur. The statute must from necessity mean the value of the assets subject to taxation and not exempt. If that were not true, as

is said in City of Waco v. Texas Life Ins. Co., Tex.Com.App., 248 S.W. 315, the effect would be to render the statute invalid. In other words, it would be to impose a tax upon property declared by statutes exempt. This property is exempt by law, Art. 7162, Sec. 37, Vernon's Statutes; 31 U.S.C.A. § 742, and 12 U.S.C.A. § 1433.

The value or sum to be taken into account for the purpose of assessing the property under Section 53 is determined, in our opinion, by taking the total value of the taxable assets (which is synonymous with property), and deducting therefrom the value of the office fixtures and furniture; the value of the real estate owned; accounts and notes payable and owing and the total of the sums of money credited to all share holders' accounts as the book value thereof, as hereinbefore determined. The remainder constitutes the value of the property or assets taxable under subsection (c).

The question is presented as to whether or not the Associations are taxable as agents of the shareholders. Plaintiffs contend they are. We think not. There is no statute cited, nor is there any contract of any kind to be found in the record which constitutes the Associations such agents. On the contrary, Art. 7152, Sec. (1), Vernon's Statutes, makes it the duty of the owner to render his property. It has heretofore been observed these shares or share accounts are property of the owner. The account is a mere balance or credit and not essentially different from an ordinary bank deposit, the latter sometimes called a chose in action, which as a general rule has a situs for purposes of taxation at the domicile of the owner. Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S.W. 778(T), and the many authorities there cited. Under the rules and authorities found in the opinion just cited we conclude the situs of the share holder's shares for taxing purposes is the domicile of the owner thereof.

The manner in which the Associations rendered their property has heretofore been indicated. After such renditions were made the Associations were notified to appear before the Board of Equalization of El Paso County at a stated time and show cause why they should not be assessed at a sum in excess of that shown by the renditions submitted by them. Subsequent to the notice just noted and before the meeting of the Board of Equalization the Associations were notified they had been assessed each in stated sums as agents of the unknown shareholders of the respective associations. At a meeting and hearing before the Board it adopted a resolution accepting the renditions submitted originally by the Associations as renditions of all taxable property owned by them and that the supplemental assessments made by the Assessor-Collector and the assessments made against them as agents of the unknown shareholders be stricken from the tax rolls. Subsequent to the meeting at which such action was had the Assessor-Collector prepared and placed on file in his office designated supplemental assessments of the surplus and capital and surplus of each Association, giving thereto a designated value. At the same time a supplemental assessment was prepared as to G. J. Casselberry, an individual shareholder in one of the defendant Associations, and assessed to him the withdrawal value of his shares and his proportionate part of the reserves therein. The plaintiffs complain that the Board was without authority to do what it did do, or purported to do, when it adopted the resolution as indicated above.

The jurisdiction of the Commissioners' Court sitting as a board of equalization is fixed by Art. 8, Sec. 18 of the Constitution, Vernon's Ann.St. The provisions providing for the equalization of the valuation of property rendered or subject to taxation are found in Art. 7206, Vernon's Statutes. The law, specifically Articles 7189, 7205, 7207 and 7208, makes it the duty of the Assessor to list and assess property for purposes of taxation. He receives lists of property from the owners or lists it himself under prescribed conditions and assesses its value. It is conceded by all the parties as is said by the authorities many times that the Board of Equalization is without power to add to or take from the assessment rolls property not placed thereon or found thereon, but its power is limited to matters affecting valua-

tions. Much of the difference between the parties here revolves around terms used and adopted. The defending defendants say the assessments for reasons pointed out by them are void and they, as did the trial court, conclude the Board had the authority to strike the assessments from the rolls. If by that is meant the Board had the power to eliminate any specific item or items of described property placed on the rolls by the Assessor then they are in error, because it has many times been said they may not. Davis v. Burnett, 77 Tex. 3, 13 S.W. 613; San Antonio St. Ry. Co. v. City of San Antonio, 22 Tex.Civ.App. 341, 54 S.W. 907; Sullivan v. Bitter, 51 Tex.Civ.App. 604, 113 S.W. 193; Harris County v. Bassett, Tex. Civ.App., 139 S.W.2d 180 (E.R.); and the authorities there cited, and the action is not binding on any one. But if it is meant the Board may deduct from the total upon which the tax is to be or is computed the valuations not authorized then that they may do. Harris County v. Bassett, supra.

 It may again be a matter of choice of terms, but the defending defendants say the assessments are void because they were not submitted to the Board nor the defendants notified as required by law, Art. 7206, Section 5, and Art. 7211, Vernon's Ann. Civ.St.; because the exempt Federal securities were assessed; because they represent, in certain instances, double assessments, and because the formula prescribed in Art. 881a, Section 53 was not followed. Of course, as already pointed out, in our opinion, there are assets included in the assessments that are taxable, and that errors exist. The assessments might be more accurately described as unenforcible in their present state rather than invalid and void, in that as they stand they are not a proper basis for the computation of the amount of taxes due, nor has the procedure necessary for the fixing of liability been followed through as pointed out and as required under the articles of the statutes last noted.

 Individual share holder defendants, recognizing their shares as mere deposits, insist they have been discriminated against and their shares are not subject to be taxed, because like deposits, such as bank deposits, saving accounts, shares in credit unions, shares in co-operatives, reserves of credit unions, reserves of labor unions, and reserves of co-operatives have been systematically omitted by the Assessor from the rolls and from taxation, and in support thereof cite the cases of Hoeffling v. City of San Antonio, 85 Tex. 228, 20 S.W. 85, 16 L.R.A. 608; Weatherly Independent School District v. Hughes, Tex.Civ.App., 41 S.W.2d 445, and City of Houston v. Baker, Tex.Civ.App., 178 S.W. 820. The holdings in these cases are discussed and made clear in the very fine opinion in City of Wichita Falls v. J. J. & M. Taxman Refining Co. Tex.Civ.App., 74 S.W.2d 524 (E.R.), and the inapplicability of them to the instant case made plain. As there said, 74 S.W.2d at pages 529, 530, pars. (4-5): "The government does not lose its right to taxes justly owing on one parcel of property, by reason of the failure of its officers, either negligently or designedly, to assess other property that is likewise taxable."

It is not the contention that the property —shares—are not subject to taxation but the fact that other like property is systematically omitted and permitted to escape taxes defendants assert should relieve them. As said in the Wichita Falls case, supra, if thus permitted the burden of taxation this property should rightly bear would be escaped and shifted to other property that has been and must be subjected to the taxes and the equality provision of the Constitution, which they invoke for protection, violated. The complaining shareholder is in no better position to complain he is discriminated against than his neighbor who owns no shares but an equivalent amount of taxable property and complains of discrimination because others having deposits such as are enumerated heretofore, or other property, deliberately and systematically omitted from the tax rolls and insists that his taxes should be reduced proportionately.

The judgment of the trial court is modified in all respects where inconsistent and contrary to the conclusions here reached and as so modified is affirmed.

PRICE, C. J., is disqualified and did not participate in this decision.