

# The Attorney General of Texas

December 28, 1977

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4814 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity
Affirmative Action Employer

Honorable Oscar B. McInnis
Criminal District Attorney
Hidalgo County
Edinburg, Texas   78539

Dear Mr. McInnis:

Opinion No. H- 1108

Re:  Taxation of property
purportedly leased by
cities in Hidalgo County
to private manufacturing
concerns; and related
questions.

You have submitted several instruments relating to
the taxable status of certain commercial property located
in Hidalgo County.  We are asked to determine whether the
private interests in the properties are taxable as lease-
holds or as fee simple interests in land.  You have also
asked if it is within the power of the Hidalgo County
Commissioners Court, sitting as a board of equalization,
to determine that property listed by the tax assessor-
collector as nonexempt property assessable to private
persons should be exempt from taxation instead.

One of the instruments purports to be a lease of
property from the City of Weslaco to a private concern,
Bowie Manufacturing Company.  Another purports to be a
lease of property from Edinburg Foundation, Inc., a local
nonprofit corporation, to another private business,
Edinburg Manufacturing Company, accompanied by an assign-
ment of the lessor's interest to the City of Edinburg.
A third instrument purports to be a direct lease of prop-
erty by the City of Edinburg to the same manufacturer.
Both cities are in Hidalgo County.

This office cannot decide disputed questions of fact
in the opinion process.  Our answers, therefore, are based
on the instruments and facts supplied us.

As we understand the facts of the Weslaco matter, the
property "leased" by the city to the private concern on
February 1, 1977, was transferred to the city that same
day by a local nonprofit corporation, Weslaco Development

P. 4535

Committee, Inc., in consideration of the city assuming both a $20,000 deed of trust note and a $1,591,200 mechanics lien construction loan note against the property -- property already occupied by the manufacturing company and upon which a large manufacturing facility had been recently built. The "lease contract" specified that the city "shall lease the land and any improvements thereon to Lessee for a term of fifteen (15) years commencing on the day the Lessor acquires the property described above. . . .", making it appear that the "lease" was executed in anticipation of the simultaneous acquisition of the property by the city. The notes assumed by the city were originally executed by Weslaco Development, Inc., on April 20, 1976.

The terms of the Weslaco agreement obligate the manufacturer to pay a monthly rental of $13,803.21 per month. You have advised us that this is the bare amount necessary to retire the construction loan payments as they come due. The contract gives the manufacturer an "option" at the end of the fifteen year term to demand from the city a fee simple title to the land and to the valuable improvements thereon, free and clear of all liens, upon the payment by the manufacturing company of an additional consideration of ten dollars. At that time the total of the "rental payments" will have equalled the total amount of the construction loan indebtedness assumed by the city. The agreement also gives the manufacturer an "option" to acquire the fee simple title at any earlier time for no consideration other than the manufacturer's assumption of the construction loan note the city had previously assumed; the manufacturer is not required to assume or pay off the note given to purchase the land.

Whether the "option" is exercised early or late, therefore, the city itself must pay off the $20,000 purchase price of the land and convey the land in fee, together with the improvements, whenever the manufacturer chooses. As to the construction loan, the instrument provides that if the manufacturer exercises its early "option" and assumes the outstanding construction loan indebtedness, the city "shall be released by the lender from all future liability for payment of said loan." The lender is not a party to the agreement and is not bound by it. The "release" provision is unenforceable. 13 Tex. Jur.2d, Contracts § 9.

Other provisions of the agreement require the manufacturer to keep the premises insured and to pay taxes "against all fixtures and personal property" located or situated on the property. The manufacturer is given the right to sublet the

property with the approval of the city, but if the city
disapproves, the manufacturer is relieved of all obligations
except the obligation to return the property.

The tax assessor-collector regards the "lease" as a sham.
He assessed the full value of the fee to the manufacturer for
1977 and submitted his tax list to the Hidalgo County Board
of Equalization for approval.  The Board held a hearing at
which it voted unanimously to consider both the Weslaco and
Edinburg properties as being exempt properties under lease,
and that no 1977 taxes be assessed against the manufacturers
for their use, but the Board has not yet taken final action.

First, we note with regard to the Weslaco property that
the owner of record on January 1, 1977, was the Weslaco
Development Committee, Inc., not the city and not the manu-
facturer.  Article 7151, V.T.C.S., provides:

> All property shall be listed for tax-
> ation . . . with reference to the quantity
> held or owned on the first day of January
> in the year for which the property is
> required to be listed or rendered.

Ordinarily, interests in land acquired after the first
day of January are not assessable for that year to the grantee.
Childress County v. State, 92 S.W.2d 1011 (Tex. 1936); Humble
Oil & Refining Co. v. State, 3 S.W.2d 559 (Tex. Civ. App. --
Waco 1927, writ ref'd); 54 Tex. Jur.2d, Taxation § 92.
However, article 7151 further states:

> During the tax year between January 1
> and October 1, when title to or any
> interest in land being acquired by . . .
> cities . . . is voluntarily conveyed by
> the owner thereof or is acquired for
> public use by condemnation . . . such
> agency's authorized tax official shall
> estimate the amount of taxes which
> would have been or will become due and
> payable for the year had the land not
> been acquired for public purposes.
>
> When such estimate of yearly taxes is
> determined . . . , such tax official
> . . . shall prorate such taxes on the
> basis of the number of months the land

> remained in private ownership or control
> . . . and shall certify same, and shall
> accept or collect said prorated taxes
> and issue his receipt therefor which
> receipt shall constitute a full . . .
> satisfaction of all such liens . . . in
> favor of the tax units. . . .

Sec. 2.

Thus, the Weslaco Development Committee, Inc., appears to be liable for all the 1977 taxes on the Weslaco property unless the land was validly acquired in February by the city "for public purposes." Unlike leaseholds in public land, leaseholds in private land are not taxable to the lessee; the entire value of the fee is taxable to the owner. See 54 Tex. Jur.2d, Taxation §§ 54, 55, 59.

The City of Weslaco assumed a substantial indebtedness to complete the transaction. In Texas, no debt can ever be validly created by a city, unless at the same time provision is made to assess and collect annually a sufficient sum to pay the interest thereon and to create a sinking fund of at least two percent thereon. Tex. Const. art. 11, §§ 5, 7; McNeill v. City of Waco, 33 S.W. 322 (Tex. 1895); Brodhead v. City of Forney, 538 S.W.2d 873 (Tex. Civ. App. -- Waco 1976, writ ref'd n.r.e.). No indication has been given us that such a provision was made in this case. See B. L. Nelson & Assoc. v. City of Argyle, 535 S.W.2d 906 (Tex. Civ. App. -- Ft. Worth 1976, writ ref'd n.r.e.).

The constitutional restriction is not applicable where the obligation assumed is payable out of current revenues for the year or from any other fund within the immediate control of the city, but neither of those exceptions seem applicable here. The city has apparently undertaken an absolute and unqualified obligation to pay the outstanding long-term notes. Under these circumstances, the city's agreement to do so would violate the Constitution and be ultra vires, void, and unenforceable. City of Ft. Worth v. Bobbitt, 41 S.W.2d 228 (Tex. Comm'n App. 1931, jdgmt adopted). See 40 Tex. Jur.2d, Rev., part 1, Municipal Corporations §§ 443-452, 638-646.

On these facts, the full value of the Weslaco property is assessable to Weslaco Development Committee, Inc., for 1977. In that connection article 7174, V.T.C.S., reads in part:

> Each separate parcel of real property
> shall be valued at its true and full
> value in money, excluding the value of
> crops growing or ungathered thereon.

But even if there are facts of which we are unaware that would take the transaction with Weslaco Development Committee, Inc., out of the reach of sections 5 and 7 of article 11 of the Texas Constitution, we believe all the transactions which took place on February 1, 1977, would be held void, nevertheless.  Section 3 of article 11 of the Constitution reads:

> No . . . city . . . shall . . . become a subscriber to the capital of any private corporation or association, or make any appropriation or donation to the same, or in anywise loan its credit; . . . .

The city, the manufacturer, and the nonprofit corporation have constructed their contractual arrangements so as to allow the use of the city's credit for the benefit of the private corporation, and to secure for the manufacturer a donation of land from the city.  The purpose of article 11, section 3 of the Constitution is to prevent such transactions.  City of Cleburne v. Brown, 11 S.W. 404 (Tex. 1889); City of Cleburne v. Gulf, C. & S. F. Ry. Co., 1 S.W. 342 (Tex. 1886); Attorney General Opinion H-357 (1974).

Persons who deal with municipalities are deemed to be on notice of the legal limitations under which cities may exercise contractual powers.  City of Beaumont v. Moore, 202 S.W.2d 448 (Tex. 1947); Zachry v. City of San Antonio, 296 S.W.2d 299 (Tex. Civ. App. -- San Antonio 1956), aff'd, 305 S.W.2d 558 (Tex. 1957).  Thus, we think the nonprofit corporation was bound to know the city could not so easily assume the indebtedness the corporation had incurred, and we think the manufacturer was bound to know the city could not lend its municipal credit or donate land to the manufacturer.

With regard to the Weslaco property, we are of the opinion that the transaction between the city and the nonprofit corporation, Weslaco Development Committee, Inc., cannot be given legal effect, and that the nonprofit corporation, as owner of the fee on January 1, 1977, is liable for all 1977 taxes on the property.

The legal principles applicable to the Weslaco transaction are equally applicable to the Edinburg transactions.  In 1968, the Edinburg Foundation, Inc., a nonprofit corporation, entered into a twenty-five year lease agreement with the Edinburg Manufacturing Company which contained provisions similar to those contained in the later Weslaco agreement, the major differences being that the "option" to obtain the fee title at the end of the primary term was not supported by a separately

expressed consideration, and the "lessor" was obligated to pay "all taxes . . . assessed . . . against the building and land. . . ."  The agreement obligated the "lessor" to construct a building on the property to the specifications of the "lessee." Rental payments were pegged at $2,000 per month.  Later that year a "corrected lease contract" between the same parties was executed, and in 1970 the nonprofit corporation assigned its interest in the lease to the City of Edinburg, in return for which the city agreed to "assume all of the obligations of Edinburg Foundation, Inc., under and arising out of said agreement."

Subsequently, in 1971, the City of Edinburg and the manufacturer entered directly into an additional "lease" agreement whereby the city agreed to build another building on a different parcel of land and "lease" it to the same manufacturer for a term of fifteen years at a rental of either $7,172.78 per month, or $6,945.21 per month, depending on the rate of interest at which the city could obtain financing for the project.  The other terms of the additional agreement were very similar to those of the agreement which the nonprofit corporation had previously assigned to the city.

There is no evidence in our file to suggest that the City of Edinburg complied with the "debt" provisions of the Texas Constitution.  Unless it did so, the city could not validly assume the Edinburg Foundation, Inc., indebtedness, nor borrow construction money for the additional lease, nor assume the tax liabilities of the "lessee."  Further, the city could not validly loan its credit to the manufacturer or donate property to it. We believe the financial obligations undertaken by the city were ultra vires, void and unenforceable.  Tex. Const. art. 3, § 52; art. 11, §§ 3, 5, 7.  See Moore v. Meyers, 282 S.W.2d 94 (Tex. Civ. App. -- Ft. Worth 1955, writ ref'd n.r.e.).

Inasmuch as the city never legally acquired the property it "leased" to the manufacturer, it would appear that the Edinburg Foundation, Inc., is still the owner of at least the first parcel transferred to the city.  The original ownership of the addition parcel "leased" and the circumstances of its acquisition by the city are not clear from the material you have submitted.  As owner, Edinburg Foundation, Inc., would be liable for all 1977 taxes assessed against the fee.  The fact that the name of the owner was incorrectly placed on the tax assessor-collector's lists would not invalidate the assessment. V.T.C.S. art. 7171.  Victory v. State, 158 S.W.2d 760 (Tex. 1942).  But see Bashara v. Saratoga Ind. Sch. Dist., 163 S.W.2d

631 (Tex. Comm'n App. 1942, opinion adopted).  Of course, whoever the rightful owner of the property might be, the taxable interest therein is subject to sale for any unpaid taxes validly assessed against it.  V.T.C.S. art. 7172.

We now turn to your second question.  The authority of the county commissioners court to sit as a board of equalization is derived from article 5, section 18 of the Texas Constitution, and article 7206, V.T.C.S.  The statute empowers the board "to correct errors in assessments," and this authority extends to the correction of erroneous designation of the owner, to the description of the property, and to valuations placed on the property by the tax assessor-collector, but the Board of Equalization has no authority to strike property from the tax rolls.  Harris County v. Bassett, 139 S.W.2d 180 (Tex. Civ. App. -- Galveston 1940, writ ref'd); Rosch v. First Savings & Loan, 203 S.W.2d 1006 (Tex. Civ. App. -- 8th Dist. 1947, no writ).

We understand that the tax assessor-collector has placed the fee interests of both the Weslaco property and the Edinburg properties on the tax rolls.  The Board of Equalization has tentatively determined that portions of the fee interests placed on the rolls are exempt from taxation and should be struck, leaving only the leasehold interests to be taxed, and has also determined that each leasehold has no taxable value.

In 1969, this office was asked which county officials have responsibility for deciding if property is to be considered tax exempt, when its tax exempt status is in dispute.  Attorney General Opinion M-328 (1969), after noting that the final authority rests in a court of competent jurisdiction, declared that the administrative responsibility for such a decision is vested in the tax assessor-collector, and that the commissioners court, sitting as a board of equalization, has no authority to consider questions relating to tax exemptions.  Its authority in that capacity is limited to matters affecting valuation.  However, the opinion concluded that the county commissioners, functioning as the commissioners court, have authority under articles 7346 and 7347, V.T.C.S., to review such decisions of the tax assessor-collector and if they are invalid, to order their reassessment.  See V.T.C.S. art. 7225; Bashera v. Saratoga Ind. Sch. Dist., supra; Attorney General Opinion O-7251 (1946).  But see Bass v. Aransas County Ind. Sch. Dist., 389 S.W.2d 165 (Tex. Civ. App. -- Corpus Christi 1965, writ ref'd n.r.e.).

It follows that the board of equalization, as a separately constituted body, has no authority to strike the fee interests

in the disputed properties from the tax rolls. While it might correct the name of the owner, the validity of the assessment is not affected, even if the board's designation of the owner should itself be erroneous. V.T.C.S. art. 7171. In our opinion the Hidalgo County Commissioners Court, sitting as a board of equalization, does not have the power to determine that property listed on the tax rolls by the tax assessor-collector as taxable property is wholly or partially exempt from taxation.

### S U M M A R Y

Properties purportedly leased by cities to private manufacturers were taxable to true owners of the fee interests where the cities never legally acquired ownership interests in them. Property which the tax assessor-collector lists on the tax rolls as nonexempt cannot be reclassified as property exempt from taxation by the county commissioners court sitting as a board of equalization, even though such assessments made by a tax assessor-collector can be later reviewed by the commissioners court, sitting as the court, which may order invalid assessments reassessed.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jst